839 So.2d 1193 (2003)
STATE of Louisiana
v.
Samuel BUCKLEY.
No. 02-1288.
Court of Appeal of Louisiana, Third Circuit.
March 5, 2003.
*1194 Richard Phillip Ieyoub, Attorney General, Burton P. Guidry, Assistant District Attorney, Baton Rouge, LA, for State of Louisiana.
Mack Irvin Frank, Attorney at Law, Opelousas, LA, for defendant, Samuel Buckley.
Court composed of SYLVIA R. COOKS, BILLIE COLOMBARO WOODARD, and BILLY HOWARD EZELL, Judges.
EZELL, J.
On July 31, 1996, Defendant, Samuel Buckley, was indicted for distribution of cocaine, in violation of La.R.S. 40:967. Defendant appeared for arraignment and pled not guilty on October 24, 1996. The court set a trial date of April 21, 1997. On February 18, 1997, Defendant appeared and the court appointed counsel for him. On April 21, 1997, Defendant failed to *1195 appear for trial and the court issued a bench warrant. Subsequently, on February 11, 2002, Defendant appeared after an arrest pursuant to the bench warrant. On July 22, 2002, Defendant appeared with counsel. After hearing argument on a defense motion to quash, the court deferred ruling. After proceeding through jury selection, the court reconvened the hearing on the motion to quash. After reviewing transcripts of earlier proceedings, the court denied the motion.
On July 23, 2002, Defendant's trial by jury began. On July 24, Defendant made a motion for mistrial, which the court denied. Defendant then entered a guilty plea, but preserved for appeal the issues related to his motion to quash and his motion for mistrial. Defendant now appeals the trial court's ruling on said motions.
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, the court finds there is one error patent.
The Defendant was sentenced to serve seven years at hard labor, the first five of which are to be served without benefit of parole, probation, or suspension of sentence. However, at the time of the commission of the offense, the penalty for distribution of cocaine was five to thirty years at hard labor and a possible fine of not more than fifty thousand dollars. See La. R.S. 40:967(B)(1). Thus, restriction on benefits eligibility renders the sentence illegal.
In State v. Gregrich, 99-178 (La.App. 3 Cir. 10/13/99), 745 So.2d 694, this court held the trial court imposed an illegal sentence when it ordered the defendant to participate in a substance abuse evaluation and to follow the resulting recommendations. In determining the appropriate remedy to correct the error, this court stated:
An illegal sentence may be corrected at any time by an appellate court on review. La.Code Crim.P. art. 882(A).
[W]hen correction of an illegal sentence does not involve the exercise of sentencing discretion, there is no reason why the appellate court should not simply amend the sentence.... However, if correction involves the exercise of sentencing discretion ... the case must be remanded for the trial court to perform that function.
Fraser, 484 So.2d at 124 n. 5.
In State v. Prince, 97-0727 (La.9/26/07); 701 So.2d 965, the supreme court simply amended the sentence imposed by the trial court to delete the requirement of restitution where restitution was not authorized by statute. Also, in State v. Lee, 94-0814 (La.6/17/94); 641 So.2d 206, the supreme court simply amended a sentence to delete the requirement of restitution where restitution was not authorized by statute. In State v. Yancy, 93-2798 (La.5/31/96); 673 So.2d 1018, the supreme court amended the sentence to delete only that portion denying the defendant eligibility for parole where at the time of the crime there was no requirement of parole ineligibility. In State v. Yarbrough, 596 So.2d 311 (La. App. 3 Cir.), writ denied, 599 So.2d 317 (La.1992), the third circuit amended the portion of the defendant's sentence that precluded parole, probation, or suspension of sentence where the preclusion of those benefits was not authorized by statute.
We note that in State v. Narcisse, 97-3161 (La.6/26/98); 714 So.2d 698, the *1196 supreme court vacated a sentence and remanded to the trial court for resentencing where the trial court erroneously required restitution and denied the defendant eligibility for good-time credits. In Narcisse, the supreme court did not state that it was required to remand the sentence because the case involved the exercise of sentencing discretion. Rather, it appears that the supreme court may have been exercising its own discretion in remanding the case, because La.Code Crim.P. art. 882(A) does not require that an appellate court correct an illegal sentence but provides that the appellate court "may" correct an illegal sentence on review.
We find the instant case is analogous to Prince, Lee, Yancy, and Yarbrough such that the correction does not involve the exercise of sentencing discretion. Therefore, we amend the sentence imposed by the trial court to delete that portion requiring participation in substance abuse evaluations and the following of the recommendations resulting from them.
Gregrich, 745 So.2d at 696 (alteration in original).
We find that correction of this error does not involve the exercise of sentencing discretion. Thus, we will amend the sentence to delete the portion of the sentence requiring that the first five years be served without benefit of parole.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, Defendant argues the lower court erred in denying his motion to quash, which alleged that the time limitation for "instituting prosecution" had expired. As with the appeal, in his oral argument below, Defendant was actually focusing on the time limit for commencing trial, not the time limit for instituting prosecution.
On appeal, Defendant cites La.Code Crim.P. art. 578, which states, in pertinent part: "Except as otherwise provided in this Chapter, no trial shall be commenced... [i]n other felony cases after two years from the date of institution of the prosecution...."
The basic analysis under Article 578 is well-settled: "Once the accused shows that the state has failed to bring him to trial within the time periods specified by La. C.Cr.P. art. 578, the state bears a heavy burden of demonstrating that either an interruption or a suspension of the time limit tolled prescription." State v. Morris, 99-3235, p. 1 (La.2/18/00), 755 So.2d 205.
This court observes that the appellate briefs, like the proceedings below, focus upon whether Defendant received actual notice of the trial date. In the case sub judice, the State instituted prosecution by indictment on July 31, 1996. As mentioned in the procedural history above, Defendant failed to appear for trial on April 21, 1997. Defendant's jury trial did not begin until July 22, 2002. Defendant changed his plea to guilty, pursuant to a plea agreement, on July 24, 2002. Clearly, more than two years had elapsed. However, the record reveals Defendant received actual notice of the April 21,1997 date in open court on February 18, 1997.
Regarding interruption, the State highlights La.Code Crim.P. art. 579(A)(3): "The period of limitation established by Article 578 shall be interrupted if ... [t]he defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record."
The record indicates Defendant received actual notice of his court date and did not *1197 appear. Defendant contends that he was at the courthouse on April 21, 1997, but that "it appeared to him that court was not being held." He further contends that "someone from the District Attorney's office" told him there would not be a trial that day. The Defendant's own argument presented in brief indicates he actually knew of his trial date, although the record of actual notice needs no such support. His contention regarding what he was told is not supported by testimony or any other evidence in the record. Further, he did not include this argument in his written motion to quash, his oral argument on the motion, or in his objection to the court's ruling on the motion. Thus, it is not proper for Defendant to raise this argument for the first time on appeal. State v. Mansion, 98-992 (La.App. 5 Cir. 4/27/99), 733 So.2d 1212, writ denied, 99-1545 (La.11/5/99), 751 So.2d 231; La.Code Crim.P. art. 841. In any case, it is clear that Article 579(A)(3) applies to this case.
There are but a few cases found by the court discussing Article 579(A)(3). However, in State v. King, 98-446 (La.App. 3 Cir. 10/7/98), 720 So.2d 103, this court observed that pursuant to Article 579(A)(3), the defendant's failure to appear on his trial date constituted an interruption of the prescriptive period set forth by Article 578. Since the defendant pled guilty in 1997, well within two years of the interruption, this court held the case had not prescribed under Articles 578 and 579(B), which state that prescription begins anew "from the date the cause of the interruption no longer exists." The court observed that the issue of whether time had began to run again was not before it, due to the defendant's plea within two years of the interruption. King, 720 So.2d 103.
In the present case, the latter issue of when time began to run again was not addressed. However, this issue is an integral part of the analysis, as shown by State v. Malone, 610 So.2d 148, 150-51 (La.App. 2 Cir.1992), a case King cited.
The period of limitation in Art. 578 begins to run anew when the State knows or should know of a criminal defendant's whereabouts, where the defendant can be served or arrested. After the period of limitation has run on its face, the burden of proving, on the hearing of a motion to quash, the duration of any interruption of the period is on the State. This burden can be met by evidence that the defendant was attempting to avoid detection and service at given addresses or that the State had made reasonable, though unsuccessful, efforts to locate defendant at addresses he had given. See cases cited supra, [State v.] Taylor[, 439 So.2d 410 (La.1983)], [State v.]Amarena[, 426 So.2d 613 (La.1983)], [State v.] Nations[, 420 So.2d 967 (La. 1982)], and Guidry.

In Taylor, supra, the court observed the defendant did not notify the court of two different changes of address, but this singular fact, standing alone, was not sufficient proof of an intent to elude authorities. There, the court held the state failed to prove that the defendant was not amenable to service even though the state made at least two attempts to serve him.
In Nations, the court held that the state failed to establish that the defendant absented himself from his usual place of abode to avoid prosecution even though defendant had twice changed apartments and could not be served at his given residence. The holding was founded on the finding that defendant had notified his bonding company of each change of address, had filed a *1198 change of address form with the post office, and had maintained a correct listing of his name, number and address with the telephone company. Nations was a DWI misdemeanor case.
In another DWI case, the defendant changed residences before service was attempted. Service was later attempted at his first address and then at the changed address. A bench warrant issued and notice of bond forfeiture was ordered served on defendant's surety. The court held that the state failed to meet its heavy burden of showing legal cause sufficient to interrupt the time for commencement of trial because the state failed to follow up on the notice to the surety for almost two years. State v. Guidry, 395 So.2d 764 (La.1981).
Each case, of course, must stand on its own facts. Here the State did not make any effort after March 1990 to contact applicant or his attorney. The telephone contact at applicant's correct number had produced some information that applicant lived on Cortez street. A deputy marshal went there. The record does not suggest that the deputy thought the residence was vacant or abandoned. He left a "card" at that address. We do not know what the card "said," if anything.
The State has not shown that applicant was attempting to avoid detection and service at either of the two addresses given them, at one of which no service whatsoever was attempted. The State showed only two attempts to contact applicant in March 1990, while the State's witness said, "on the average," the state made in the neighborhood of four attempts to contact a defendant on a DWI charge.

CONCLUSION
"Indifference" by a criminal defendant who has an attorney of record, whose correct number is listed in the telephone directory, and who does not otherwise attempt to avoid detection and service at given addresses, is not sufficient to prevent the Art. 578 period of limitation from running anew after interruption by a bench warrant. Such a defendant may be as "indifferent" as he chooses because the responsibility or burden is to respond to the authority of the arresting officer or to appear when ordered to do so. That responsibility or burden is on the State to have such defendant's case placed back on the court docket for trial or to have the bench warrant served, or to show, on the hearing of a motion to quash, that it made reasonable, although unsuccessful, efforts to contact or serve the warrant on the defendant, so as to allow the conclusion that defendant had been avoiding the state's reasonable attempts to locate and serve or arrest him.
We find that the majority's reasoning in Malone does not appear to be congruent with Article 579(A)(3), as it appears to require the State to prove it searched for defendants who have failed to appear. This apparent incongruence was discussed in Judge Victory's dissent:
All of the cases cited in the majority opinion were decided prior to the 1984 Legislative amendment adding subsection A(3) to LSA-C.Cr.P. Art. 579, and dealt with interruptions under Art. 579A(1) and (2), i.e., flight or hiding by the defendant with the intent to avoid prosecution, or the state's inability to secure his presence for trial by legal process. In those cases, the cause of the interruption was held to no longer exist when the state found out where the defendant was, or failed to take reasonable steps to locate him.
In my view, the cause of the interruption under Art. 579A(3) no longer exists *1199 when the defendant again appears in court, or the defendant is arrested, is in custody on the warrant and the state is aware of it, or his whereabouts are known to the state. Once the state shows the interruption, i.e., the failure of the defendant to appear in court after notice in the record, the defendant should then have to prove that the cause of the interruption no longer existed. Here, the defendant did not appear in court until after he filed his Motion to Quash in January of 1992 and was never arrested on the bench warrant and taken into custody.
....
... Although the defendant may have been living on Cortez Street in March of 1990, he failed to show the state knew it at the time. Hindsight is 20/20, and it is easy to now say the state should have known it because the defendant later testifies it is true. The defendant should not unjustly benefit from his failure to appear for trial and to give the arresting officer, his bondsman, and the state his correct address.
Malone, 610 So.2d at 151-52 (emphasis supplied).
We are aware that the jurisprudence indicates the majority view from Malone has prevailed in cases applying Article 578. In State v. Chadbourne, 98-1998 (La.1/8/99), 728 So.2d 832, the supreme court squarely stated the prosecution's burden under Article 578 includes proving it searched for a non-appearing defendant. However, Chadbourne is not a case that discussed Article 579(A)(3).
Again, few cases discuss Article 579(A)(3). Other than King and Malone, we have found only State v. Mack, 30,795,30,796 (La.App. 2 Cir. 6/24/98), 716 So.2d 137 and State v. Ward, 36,545 (La.App. 2 Cir. 11/13/02), 830 So.2d 1135. Although Mack did not specifically cite Article 579(A)(3), it dealt with an actual-notice situation. However, it is not helpful to the current analysis, because the defendants appeared in court a mere seven days after their non-appearance. Ward is similarly inapposite, since the State in that case failed to issue a bench warrant, and the defendant presented evidence of an informal agreement to reset the court date.
Regarding Article 579(A)(3) and the present case, we find that the Malone dissent is more logical, in light of the language of the article. In our view, a defendant who has chosen to ignore actual notice, should not receive any benefit from his action; by the same token, the State should not bear the burden of finding and re-serving (or arresting) such defendants and holds that the trial court properly denied Defendant's motion to quash.
On appeal, Defendant also attempts to argue his federal constitutional right to a speedy trial was violated by the delay between the indictment and the commencement of trial. However, he did not raise this argument below; therefore, it will not be considered. Mansion, 733 So.2d 1212. We note State v. Williams, 02-1030, 02-898 (La.10/15/02), 830 So.2d 984, in which the court stated that generally issues not argued at trial will not be reviewed on appeal. "Constitutional issues are no exception." Id. at 988. However, we have found no cases specifically stating whether a failure to raise constitutional speedy trail rights at trial preclude a defendant from raising the issue on appeal. Further, Williams and Mansion both dealt with attacks on the constitutionality of statutes, thus, they may not be on all fours with the present case. Therefore, *1200 we will review the claim out of an abundance of caution.
This court has explained:
Further, in Barker v. Wingo, [407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972),] the United States Supreme Court identified four factors to determine whether a particular defendant had been deprived of his right to a speedy trial; namely, (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; (4) prejudice to the defendant.
State v. M.M., 00-1296, p. 35 (La.App. 3 Cir. 8/29/01), 802 So.2d 43, 69, writ denied, 01-3370 (La.10/4/02), 826 So.2d 1121 (footnote omitted).
First, the length of the delay in this case was just over five years. Although a cursory survey of Louisiana cases reveals that lesser delays have been considered presumptively prejudicial, in Barker itself, the Supreme Court observed that an approximately five-year delay, viewed separately, was "too long a period." However, there are three other factors to consider; the second focuses upon the reason for the delay.
In the present case, it is clear from the facts already stated that any delay that occurred in beginning the trial is attributable to Defendant himself. In State v. Dewey, 408 So.2d 1255 (La.1982), the court held that defendant's incarceration in federal prisons outside Louisiana was a valid reason for trial delays. In State v. James, 394 So.2d 1197 (La.1981), the court held the defendant's absconding from custody was a valid reason for delay of his trial. See also State v. Howard, 325 So.2d 812 (La.1976), in which defendant escaped twice while trial was pending. Thus, the court noted that much of the delay was attributable to him. In light of these cases, we find that the reason for the delay in the present case is attributable to the Defendant.
Regarding the third Barker factor, the record indicates Defendant failed to assert his constitutional right to a speedy trial in the court below, as already discussed. On appeal, Defendant fails to argue the fourth and final Barker factor. His brief makes no attempt to demonstrate prejudice, pursuant to Barker.
Thus, in viewing the record before the court, the Defendant's constitutional speedy trial rights were not violated. Although the delay was fairly lengthy, it is attributable to Defendant; also he makes no showing regarding the third and fourth Barker factors. Defendant's speedy trial argument is without merit and for the reasons discussed, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, Defendant alleges the State violated its discovery obligations via late disclosure of a videotape of the transaction. More specifically, Defendant argues the tape that he was provided in discovery was shorter and of lower quality than the videotaped evidence the State introduced at trial. Thus, he argues, he was "lulled into a misapprehension of the strength of the [s]tate's case." State v. Williams, 448 So.2d 659 (La.1984). Although the State argues this issue was mooted by the plea, the court notes Defendant preserved this issue, as part of his plea agreement.
The trial court heard argument on the discovery issue outside the jury's presence. The court ruled that a discovery violation had taken place, but that Defendant had failed to show prejudice. The court advised *1201 Defendant he would be free to raise the prejudice issue again, if he observed such prejudice during the course of trial. Our review of the record indicates Defendant did not subsequently raise a specific instance of prejudice. He objected to the introduction of the tapes but relied on his arguments made at the hearing.
One witness, informant John Wayne Jones, testified about the drug transaction. The tapes were introduced and viewed during his testimony. After a recess, Defendant entered his guilty plea, reserving the mistrial issue and the motion to quash issue for appeal.
The State introduced the drug surveillance videos as S-1A, S-1B and S-1C. The record indicates Defendant did not introduce the allegedly lower-quality tape he received, either as an exhibit or a proffer. The Defendant has neither preserved nor provided a means to assess his argument. The record is simply incomplete on this issue. Thus, Defendant has failed to make a showing of prejudice.
Any other discovery-related issues Defendant mentions were not raised at the hearing before the trial judge. Further, they were not preserved as part of Defendant's plea. Therefore, the Court finds no need to discuss them. For the reasons discussed, this assignment lacks merit.

CONCLUSION
Defendant's conviction and sentence are affirmed.
AFFIRMED.