985 So.2d 722 (2008)
STATE of Louisiana
v.
Lionel ROMAR.
No. 2007-K-2140.
Supreme Court of Louisiana.
July 1, 2008.
*724 James D. Caldwell, Attorney General, Walter P. Reed, District Attorney, Kathryn Landry, Special Appeals Counsel, for applicant.
Olivier Provosty Carriere, II, for respondent.
PER CURIAM.
On December 16, 1997, the state charged defendant by bill of information with operating a motor vehicle while intoxicated, third offense, in violation of La.R.S. 14:98. Defendant appeared at arraignment on January 21, 1998, and entered a plea of not guilty. The court set a trial date of March 16, 1998. On March 5, 1998, defendant again appeared in court for a hearing on pre-trial motions. At the request of defense counsel, the court reset trial for April 20, 1998. On that date, defendant failed to appear, and on motion of the defense, the court reset trial for June 15, 1998. When defendant failed to appear on that date, the trial court ordered his surety bond forfeited, his personal surety bond revoked, and issued an attachment for his arrest. See La.C.Cr.P. art. 346(1)(court may issue a warrant for the arrest of the defendant when "[t]here has been a breach of the bail undertaking."); La.C.Cr.P. art. 326 (condition of the bail undertaking "shall be that the defendant will appear at all stages of the proceedings to answer the charge before the court in which he may be prosecuted [and] will submit himself to the orders and process of the court....").
Defendant did not reappear in court until October 6, 2006, or over eight years later, following his arrest on another charge of operating a motor vehicle while intoxicated, and execution of the open attachment for him issued in the present case. The minutes for October 9, 2006, indicate that defendant entered a plea of guilty to the attachment, and the court sentenced him to 10 days in the parish jail. On January 18, 2007, defendant appeared in court for trial and through counsel filed a motion to quash on grounds that the time limits for bringing the case to trial had long since expired as a matter of La.C.Cr.P. art. 578(A)(2). The trial court granted the motion and the First Circuit affirmed. State v. Romar, 07-0789 (La. App. 1st Cir.10/3/07), 2007 WL 2852439 (unpub'd)(Whipple, J., dissenting). We granted the state's application to review the rulings below and now reverse.
At the hearing on the motion to quash, defendant testified that in 2003 he had moved from his address in Slidell, Louisiana, where he lived when arrested on the present charge, to Lacombe, Louisiana. He renewed his driver's license in January 2003, and the new license, a copy of which was introduced at the hearing, reflected the change of address. Defendant also introduced a copy of his utility bill documenting his electric use from September 1996, to the end of January 2003, at the Slidell address. However, defendant testified that he did not inform his bondsman or the court of the change in address because his attorney had told him that "he was taking care of this." As for his failure to appear for trial in April 1998, defendant testified that when he came to court for pre-trial motions on March 5, 1998, he *725 approached the clerk of court "to let her know my name and that's it. I never stayed in court no more than three minutes... they never gave me a piece of paper."
In granting the motion to quash at the close of the hearing, the court expressed frustration over the prospect of seeing "somebody avoid prosecution by shirking responsibilities." However, the court also noted that "the case law is clear that, the State still has to make an effort to get him.... if he got his license renewed within that time, or even after that time, they could have scooped him up ... he wasn't trying to hide or anything, he had moved.... But he was still locatable just by checking the utility companies, etc."
As a general matter, the state has two years from the institution of prosecution to begin trial of a non-capital felony. La.C.Cr.P. art. 578(A)(2). The statutory periods of limitation "enforce the accused's right to a speedy trial and... prevent the oppression caused by suspending criminal prosecutions over citizens for indefinite periods of time." State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284, 1286; see United States v. Marion, 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971)(statutes imposing time limits on trial "provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced."). That period may be enlarged as the result of suspension, La.C.Cr.P. art. 580, or interruption, La.C.Cr.P. art. 579, but in either case, the state "bears the heavy burden of showing that it is excused from trying the accused on a charge later than the period mandated by [La.C.Cr.P. art.] 578." State v. Chadbourne, 98-1998, p. 1 (La.1/8/99), 728 So.2d 832 (internal quotation marks and citations omitted). That burden ordinarily "`requires the State to exercise due diligence in discovering the whereabouts of the defendant as well as taking appropriate steps to secure his presence for trial once it has found him.'" State v. Bobo, 03-2362, p. 5 (La.4/30/04), 872 So.2d 1052, 1055-56 (quoting Chadbourne).
However, this jurisprudence evolved under the statutory guidelines for determining causes of interruption of the time limits specified by La.C.Cr.P. art. 578 when the defendant "at any time" flees from the state or absents himself "from his usual place of abode within the state," for the purpose of avoiding arrest or prosecution, La.C.Cr.P. art. 579(A)(1), see, e.g., State v. Groth, 483 So.2d 596 (La.1986); State v. Taylor, 439 So.2d 410 (La.1983); State v. Amarena, 426 So.2d 613 (La.1983), or the defendant cannot be tried for any cause "beyond the control of the state." La.C.Cr.P. art. 579(A)(2). See, e.g., State v. Devito, 391 So.2d 813 (La.1980); see also Amarena, 426 So.2d at 617. In particular, when the defendant's absence results from his imprisonment in another jurisdiction, the state must take affirmative steps to secure his presence for trial in Louisiana once his whereabouts have come to its attention, or prosecution beyond the time limits of La.C.Cr.P. art. 578 may lapse. Amarena, 426 So.2d at 618-19 ("The interruption of prescription because of Amarena's flight from Louisiana came to an end when the state learned of the defendant's whereabouts and had the power to obtain the return of the defendant to this jurisdiction. Prescription once more began to run against the state ... when the California Attorney General wrote the Louisiana officials, telling them where Amarena was."); Devito, 391 So.2d at 816 ("The state has failed to carry its heavy burden of showing that it was unable to act or prevented from acting to obtain defendant's presence for trial after it received notice that defendant *726 was incarcerated in New Jersey and susceptible to extradition."). The rule is a logical corollary of the provision in La. C.Cr.P. art. 579(B) that the "periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists." See State v. Williams, 414 So.2d 767, 769 (La.1982)(when state had notice that defendant remained in Oklahoma City after his release from jail in that jurisdiction, and the state had "ample time to locate defendant through the authorities in Oklahoma," state failed to show a cause beyond its control that would continue to interrupt prescription).
However, in 1984, the legislature amended La.C.Cr.P. art. 579 to add a third ground of interruption, i.e., that the defendant "fails to appear at any proceeding pursuant to actual notice, proof of which appears of record." 1984 La. Acts 671. The courts of appeal have split over the question of whether the state bears the same burden under La.C.Cr.P. art. 579(A)(3) of showing that it exercised due diligence in determining the whereabouts of the defendant and in securing his presence for trial as it does under La.C.Cr.P. art. 579(A)(1) and (A)(2). Compare State v. Malone, 610 So.2d 148, 150 (La.App. 2nd Cir.1992)("The period of limitation in Art. 578 begins to run anew when the State knows or should know of a criminal defendant's whereabouts, where the defendant can be served or arrested.") with State v. Buckley, 02-1288, p. 8 (La.App. 3rd Cir.3/5/03), 839 So.2d 1193, 1199 ("In our view, a defendant who has chosen to ignore actual notice, should not receive any benefit from his action; by the same token, the State should not bear the burden of finding and re-serving (or arresting) such defendants...."). In the present case, the First Circuit panel agreed in principle with the Third Circuit that La. C.Cr.P. art. 579(A)(3), "does not require proof that the State searched for a defendant who failed to appear." Romar, 07-0789 at 4 (citing Buckley). However, it found that the state had forfeited any claim of interruption under La.C.Cr.P. art. 579(A)(3) by failing to raise it in the trial court, thereby "preclud[ing] the defendant from defending against that claim at the hearing on the motion to quash." Id.
We agree with the First and Third Circuits that La.C.Cr.P. art. 579(A)(3) does not impose on the state the affirmative duty to search for a defendant who has failed to appear for trial after receiving actual notice. The 1984 amendment of La.C.Cr.P. art. 579 made a defendant's contumacious failure to appear for trial after receiving notice, a direct contempt of court, La.C.Cr.P. art. 21(A)(1), a ground of interruption of the time limits in La. C.Cr.P. art. 578 for bringing him to trial, without regard to whether he thereby intended to avoid prosecution altogether by rendering himself a fugitive from justice, or whether he had otherwise placed himself beyond the control of the state to secure his presence for trial. In the present case, an interruption of the time limits occurred when defendant failed to appear for trial on April 18, 1998, for which he received actual notice in court at the pre-trial hearing conducted on March 5, 1998. The state then took the necessary steps to secure the presence of the defendant by prompting the trial court on June 15, 1998, to issue an attachment for his arrest, after his second failure to appear for which he may or may not have received actual notice, and to revoke his surety bonds. However, it appears that the sureties did not take advantage of the six-month grace period afforded by Louisiana law for avoiding forfeiture of the bond by arresting and surrendering the defendant. See La. C.Cr.P. art. 345(A)("A surety may surrender the defendant or the defendant may *727 surrender himself, in open court or to the officer charged with his detention, at any time prior to forfeiture or within the time allowed by law for setting aside a judgment of forfeiture of the bail bond. For the purpose of surrendering the defendant, the surety may arrest him."); La. R.S. 15:85(10)(a); 15:85(10)(b)(i)(judgment of forfeiture satisfied by surrender of defendant and his appearance in court at any time within six months of the mailing of the notice of judgment of bond forfeiture). Defendant did not surrender himself, and his attorney evidently did not arrange for him to appear in court to recall the attachment or resolve the matter of direct contempt. La.C.Cr.P. art. 22 ("A person who has committed a direct contempt of court may be found guilty and punished therefor by the court without any trial, after affording him an opportunity to be heard orally by way of defense or mitigation.").
In these circumstances, Louisiana law affords the state the discretion to keep the attachment open as a trip wire against the day when a defendant again comes to the attention of the authorities. In the present case, nearly eight years passed before that happened, and during that time, as the trial court observed, defendant was, at least in theory, "locatable." However, a warrant for arrest "remains in effect until executed," La.C.Cr.P. art. 205; State v. Bell, 334 So.2d 385, 387 (La. 1976)(in Louisiana, "an arrest warrant does not become `stale' with the passage of time.")(citing La.C.Cr.P. art. 205), and Louisiana no longer requires an accounting to the judge who issues a warrant of the reasons why it has not been promptly executed. See 1928 La.C.Cr.P. art. 57 (requiring a statement of reasons for non-execution of an arrest warrant within 10 days after it issued); see also 1928 La. C.Cr.P. art. 66 (Governor may authorize any peace officer within the state to execute an arrest warrant for the accused "wherever he may be found" when local authorities have failed to execute a warrant within a reasonable time). In the present case, the period of limitation did not begin to run anew until the cause of the interruption no longer existed, i.e., until defendant was finally arrested on the open attachment and appeared in court to dispose of the criminal contempt proceeding. The burden under La.C.Cr.P. art. 579(A)(3) thus falls not on the state to show that defendant had placed himself outside of its control to secure his presence at trial but on defendant and his sureties to avoid the consequences of his failure to appear in court after receiving notice, and one of those consequence, since 1984, is the interruption of the time limits placed on trial.
We further find that the court of appeal erred in ruling that the state may not argue the cause of interruption under La.C.Cr.P. art. 579(A)(3) because it failed to raise the issue in the trial court. It clearly appears from the transcript of the proceedings conducted on January 18, 2007, that when the state offered a "quick argument" on its case for excusing the apparent untimeliness of the prosecution, the trial court cut it off with a curt, "No," and proceeded to give its reasons for granting the motion to quash. To the extent that defendant had previously pleaded guilty to the criminal contempt citation, he had removed any factual dispute over the question of whether he had failed to appear after receiving actual notice of the trial date set for April 20, 1998, notwithstanding his testimony at the hearing that he merely checked in with the clerk of court on March 5, 1998, and did not receive a subpoena for the reset trial date. Thus, the failure of the state to argue a specific cause of interruption in *728 the trial court, a direct result of the court's action cutting off any argument, did not prejudice defendant in responding to what had become, given his guilty plea, a purely legal question regarding the proper interpretation of La.C.Cr.P. art. 579(A)(3).
Accordingly, the decisions of the courts below are reversed, the prosecution is reinstated, and this case is remanded to the district court for all further proceedings consistent with the views expressed herein.
JUDGMENTS OF THE COURT OF APPEAL AND DISTRICT COURT REVERSED; PROSECUTION REINSTATED; CASE REMANDED.