DENNIS R. BAGNERIS, SR., Judge.
hThe State of Louisiana appeals a judgment of the trial court, which granted the appellee, Maya McQuirter’s, motion to quash. The State also filed a motion to supplement the record. For the following reasons, we hereby reverse the judgment of the trial court and deny the State’s motion to supplement the record because the material contained in the supplement was not presented to the trial court or subjected to adversarial challenge.
FACTS
Defendani/Appellee, Maya McQuirter, was charged in Orleans Parish by bill of information with the crime of Simple Burglary on June 19, 2003. Bond for the appellee was set at $7,500. Appellee was arraigned on June 24, 2003, and pled not guilty. As a special condition of her bond, the appellee was ordered to participate in the court’s intensive probation program and to report for weekly.drug tests beginning on June 25, 2003. The record indicates that the appellee was notified that her next hearing date would be July 14, 2003.
Motion hearings originally set for July 14, 2003, were reset to August 14, 2003. On August 14, 2003, the appellee did not appear for motion hearings; the record states that appellee had not been served. The trial court issued an alias |2capias and set the matter for bond forfeiture on August 27, 2003. The matter was reset on August 27, 2003, when the court learned that the appellee had not been served. Again, on September 15, 2003, the appellee did not appear for the bond forfeiture hearing. The trial court issued an alias capias and ordered that no bond be set for the appellee. The bond forfeiture hearing was continued without date.
Meanwhile, the appellee was arrested by Jefferson Parish authorities on December 29, 2003, and was sentenced to serve seven years with the Louisiana Department of Corrections on March 25, 2004.
An arrest warrant was issued by Orleans Parish Sheriff deputies on December 6, 2011, based on the alias capias of September 15, 2003. With the appellee scheduled to be released from custody on the Jefferson Parish conviction on December 7, 2011, the appellee’s attorney made an unscheduled court appearance in Orleans Parish on December 6, 2011, where a capi-as for the arrest of the appellee was issued for December 7, 2011. On December 7, 2011, the appellee appeared before the Orleans Parish trial court where her bond obligation was set at $1,000. The matter was reset for status to December 19, 2011. At the status hearing of December 19, 2011, counsel for the appellee orally moved to quash the State’s bill of information of June 19, 2003. After a hearing on January 12, 2012, the trial court granted appellee’s motion to quash. The State now appeals this final judgment.
DISCUSSION
The State argues on appeal that the trial court abused its discretion in granting the appellee’s motion to quash on January 12, 2012. The State submits that the two year limitation on prosecution of the appellee was interrupted when she failed to appear for motions on July 14, 2003, pursuant to actual notice, and | ¡¡that the running of the limitation period was restarted when she *372 appeared in court on December 11, 2011. The State concedes that it normally bears the burden of locating an accused and bringing that person to trial; however, the State points out in its brief that in this case, appellee was arraigned on June 24, 2008; the appellee was notified in court that her next hearing date would be July 14, 2003; that prescription was interrupted when the appellee failed to appear for her motion hearing date; and that prescription restarted on December 7, 2011, when the appellee appeared before the trial court.
The Louisiana Supreme Court held in State v. Rome, 93-1221, p. 3 (La.1/14/94), 630 So.2d 1284, 1287, that when the state is unable, through no fault of its own, to try a defendant within the period specified by statute, “An interruption of prescription occurs.” The State argues that, pursuant to State v. Romar, 2007-2140 (La.7/1/08), 985 So.2d 722, and La. C.Cr.P. Article 579(B), the period of limitation in this case did not begin to run anew until the cause of the interruption no longer existed, i.e., until defendant was finally arrested on the open attachment on December 6, 2011 and appeared in court on December 7, 2011. Thus, the State argues that it had until at least December 6, 2013 to bring the appel-lee to trial.
La. C.Cr.P. art. 578(A)(2) reads as follows:
A. Except as otherwise provided in this Chapter, no trial shall be commenced nor any bail obligation be enforceable:
(2) In other felony cases after two years from the date of institution of the prosecution.
|4La. C. Cr. P. art. 579, recently amended by the state legislature,[1] governs which actions by the defendant interrupt the running of prescription. The statute provides the following:
A. The period of limitation established by Article 578 shall be interrupted if any of the following occur:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state;
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state;
(3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record. (Emphasis added).
B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
In State v. Romar, 2007-2140, p. 6 (La.7/1/08), 985 So.2d 722, 726, the defendant was charged with a third offense DWI in 1997 and appeared for arraignment in January 1998. The defendant appeared again for a pretrial motion hearing, which was then reset for April 1998. He failed to appear in April and again in June 1998, at which time the court forfeited the defendant’s bond and issued an attachment for his arrest. The defendant was not arrested until 2006, eight years later. He subsequently sought to quash the prosecution on the grounds that the state had failed to exercise due diligence to execute the outstanding warrant in the years fol *373 lowing his non-appearance in court. He presented evidence to show that he had renewed his driver’s license in 2003 and also presented utility bills to show that he had lived at the same address for many years. He admitted |sthat he never notified the court or his bondsman of his change of address, testifying that his attorney told him that he would take care of it. The trial court quashed the charge, and the appellate court affirmed. The Supreme Court reversed, stating:
In the present case, the period of limitation did not begin to run anew until the cause of the interruption no longer existed, i.e., until defendant was finally arrested on the open attachment and appeared in court to dispose of the criminal contempt proceeding. The burden under La.C.Cr.P. art. 579(A)(3) thus falls not on the state to show that defendant had placed himself outside of its control to secure his presence at trial but on defendant and his sureties to avoid the consequences of his failure to appear in court after receiving notice, and one of those consequence, since 1984, is the interruption of the time limits placed on trial.
Romar, 2007-2140, pp. 7-8, 985 So.2d at 727. Thus, the Romar Court found the fact that the defendant was theoretically “loeatable” to be of no significance once it was established that the defendant had received actual notice.
In State v. Baptiste, 2008-2468 (La.6/23/10), 38 So.3d 247, the Louisiana Supreme Court found that the state did not bear a duty to monitor the status of the outstanding arrest warrant issued for the defendant, who failed to appear in Plaquemines Parish after receiving actual notice of the hearing date. The defendant was incarcerated in St. Charles Parish approximately six months after the arrest warrant was issued by Plaquemines Parish. The Louisiana Supreme- Court found that prescription was interrupted when the defendant failed to appear in court, and that the interruption of prescription ended when the St. Charles Parish authorities contacted officials in Plaquemines Parish and notified them of defendant’s impending release, after they discovered the outstanding warrant.
IfiAlso, in State v. Thomas, 2010-0528, 2010-0303, 2010-0529 (La.App. 4 Cir. 7/15/10), 54 So.3d 1, this Court overruled the granting of defendants’ motion to quash where the approximately eight-year delay was not attributable to the State.
The appellee submits that, without the exhibits the state intends to improperly introduce with its brief, service upon the appellee cannot be established and thus, this Court must affirm the trial court’s judgment. In her written motion to quash the bill of information, the appellee asserted that her right to a speedy trial had been violated. The Sixth Amendment to the United States Constitution guarantees the right to a speedy trial, providing that “[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial....” The right to a speedy trial is imposed on the states by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Klopfer v. State of North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). The Louisiana Constitution also provides that “[e]very person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy ... trial_” La. Const. art. I, § 16.
To assist courts in determining whether a defendant’s right to a speedy trial has been violated, the United States Supreme Court addressed the issue in Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972) and established four tests by which the determina *374 tions may be made. They are, in descending order, the length of the delay, the reason the government assigns to justify the delay, whether a defendant asserts his right to a speedy trial, and prejudice to the accused resulting from the delay. Both the State and defendant look to Barker to support their respective arguments that the other side is responsible for any delay. The relevant portion of the Barker Court’s decision reads as follows:
|7A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors:
* * *
The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.
[[Image here]]
Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government, [footnote omitted]. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.
⅝ * *
A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; [footnote omitted] and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.
Barker, 407 U.S. at 530-531, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972).
In analyzing a constitutional speedy trial violation claim, the four-factor test set forth in Barker v. Wingo, is applied; to wit: (1) the length of the delay, (2) the 18reason for the delay, (3) the defendant’s assertion of his right to a speedy trial, and (4) the prejudice to the defendant.
The initial factor, the length of the delay, is often referred to as the “triggering mechanism” because absent a “presumptively prejudicial” delay, further inquiry into the Barker factors is unnecessary. See State v. Santiago, 2003-0693, p. 3, (La.App. 4 Cir. 7/23/03), 853 So.2d 671, 673, citing State v. De Rouen, 96- *375 0725, p. 3 (La.App. 4 Cir. 6/26/96), 678 So.2d 39, 40. Under Barker, the peculiar circumstances of the case determine the weight to be ascribed to the length of the delay and the reason for the delay. In State v. Reaves, 376 So.2d 136 (La.1979), the State continued a defendant’s trial at least four times due to the absence of a police officer. The Louisiana Supreme Court ruled:
Given a misdemeanor offense such as possession of a single marijuana cigarette, the requirement of prejudice is not as stringent as it could be in the case of a more serious or violent crime. See Barker, supra, and [State v.] Alfred, [337 So.2d 1049 (La.1976) ] supra. The defense counsel argued without contradiction that the defendant, a forty-two year old man with a family to support, was forced to miss six days of work to go to court. On each of four occasions the trial was set to begin, the defendant stood ready with his witness, yet the state could not put on its case. Although the prejudice to the defendant here would not normally be considered serious, the fact remains that for this misdemeanor offense the economic and psychological burdens placed on the defendant by repeated, futile court appearances may ultimately force him to plead guilty in order to maintain his job and peace of mind. See State v. Nowell, 363 So.2d 523 (La.1978); State ex rel. Miller v. Craft, 337 So.2d 1191 (La.1976).
Reaves, 376 So.2d at 139.
The appellee asserts that a delay of nearly nine years in bringing to trial a matter whose time for trial expires after two years is delay which is presumptively prejudicial, particularly in light of the fact that she was held in state custody, not in |9a distant jurisdiction but in a neighboring parish. Appellee avers that the second Barker factor has been met in that the delay is attributable to the state. She argues that she remained in state custody for over seven of the nearly nine years which have elapsed, during which time she was physically prevented from returning to court. Appellee points out that on the day before her sentence ended, paperwork had already been prepared to have her transported to Orleans Parish Criminal Court, proving that the authorities had continuing access and could have issued a writ to have her brought to court at any time. The state concedes that it made no attempt to locate her during that time. The appellee asserts that failure by a defendant to assert her right to a speedy trial is not a waiver of that right under Barker. Rather, requesting a speedy trial is only one of the Barker factors whose significance is viewed in light of the facts of the case. She argues that because she had only one court appearance; because the record is unclear regarding service; and because of her extended period in custody thereafter, she arguably had no opportunity to request a speedy trial. This factor, she submits, should not be held against her. Finally, the appellee believes that her interests have been harmed in that she has been prejudiced in this case. The State’s delays have caused her increased anxiety and concern because she believes that preparation of any meaningful defense has been impaired, citing Barker, 407 U.S. at 532, 92 S.Ct. 2182. The appellee argues that because all four of the Barker tests have been met, the trial court did not err in granting her motion to quash the bill of information.
The record before this Court shows that the appellee received notice in open court on June 24, 2003 to appear on July 14, 2003, and that she failed to do so. Because we find that the State has carried *376 its burden of proving that the appellee received adequate service, there was no basis to quash the bill on statutory | ^grounds. Further, we do not find that the State had an obligation to bring the appellee to trial while she was incarcerated in Jefferson Parish once the prescription period was interrupted when appellee failed to appear in court. See State v. Williams, 2011-1231, pp. 6-7 (La.App. 4 Cir. 5/23/12), 95 So.3d 554, 558, (whereby this Court held that the State is under no obligation to locate a defendant who was subsequently incarcerated in another parish once the prescriptive period has been interrupted by record proof of actual notice.)
Accordingly, we hereby reverse the judgment of the trial court, which granted the motion to quash. The motion to supplement the record is also denied.
REVERSED; MOTION TO SUPPLEMENT RECORD IS DENIED.

. As amended by 2010 Louisiana House Bill No. 1237, Louisiana Thirty-Sixth Regular Session March 29, 2010.