| STATE OF LOUISIANA | * | NO. 2019-KA-0441 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| JUSTIN MARSHALL | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 465-814, SECTION "B"
Honorable Tracey Flemings-Davillier, Judge
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *
(Court composed of Judge Terri F. Love, Judge Regina Bartholomew-Woods,
Judge Paula A. Brown)

**LOVE, J., DISSENTS AND ASSIGNS REASONS**

Leon Cannizzaro
DISTRICT ATTORNEY
Donna Andrieu
CHIEF OF APPEALS
Irena Zajickova
ASSISTANT DISTRICT ATTORNEY
Parish of Orleans
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR APPELLANT

Mary Constance Hanes
LOUISIANA APPELLATE PROJECT
P. O. Box 4015
New Orleans, LA 70178-4015

      COUNSEL FOR DEFENDANT/APPELLEE

                    **AFFIRMED**
              **SEPTEMBER 11, 2019**

The State seeks review of the trial court's December 19, 2018 ruling granting Defendant's motion to quash the bill of information based on the State's failure to timely bring Defendant to trial within the two-year prescriptive period set forth in La.C.Cr.P. art. 578(A)(2). For the reasons that follow, we affirm the judgment of the trial court.

**BACKGROUND**

On July 5, 2006, the State filed a bill of information against Defendant charging him with aggravated escape in violation La.R.S. 14:110(C)(1). On November 6, 2006, the trial court found no probable cause and set a trial date of December 7, 2006. Defendant was present in court when the trial date was set, and the clerk's minutes reflect that "defendant was notified in court." Proof of Defendant's service of notice of his trial date is contained in the court record.

On December 7, 2006, Defendant failed to appear for trial. On that same date, the State filed a motion and order of *habeas corpus ad prosequendum* directing the Warden of Jefferson Parish Prison to produce Defendant in Orleans

Parish Criminal District Court on December 18, 2006, specifically setting forth its knowledge of Defendant's confinement in Jefferson Parish Prison ("JPP").

On December 18, 2006, Defendant failed to appear in court for a pre-trial conference. Again the State sought *habeas* relief, directing the Warden of JPP to produce Defendant on January 18, 2007. However, the minutes reflect that the court set the matter for pretrial conference on January 10, 2007. Defense counsel appeared without Defendant, and the matter was once again reset for February 1, 2007. In connection with the State's *habeas corpus ad prosequendum* to Jefferson Parish officials, a notation by the deputy clerk of court dated "01/17/07" on the bottom of the order reflects that Defendant is "not in Jefferson Parish Custody."

When Defendant failed to appear for the January 10, 2007 conference, another pre-trial conference was set for February 1, 2007. No habeas relief was sought and notice of the re-setting of the pre-trial conference was mailed to Defendant, though the record contains no evidence of its receipt by Defendant. On February 1, 2007, Defendant failed to appear and the matter was reset for February 12, 2007. On February 12, 2007, Defendant again failed to appear. The State advised that it was unable to locate him at any facility in Louisiana. Thereafter, the trial court issued an alias capias for Defendant's arrest with no bond and continued the matter without date.

On September 26, 2018, Defendant was arrested on the capias. On September 28, 2018, Defendant appeared in court, but was released without bond. On November 28, 2018, Defendant filed the motion to quash at issue. On December 19, 2018, the trial court held a hearing with regard to Defendant's

motion to quash, and granted the motion. The State timely noted its objection, its intent to appeal and requested that the bill of record be lodged.

**ANALYSIS**

The State argues the trial court erred in granting Defendant's motion to quash the bill of information based on prescription. In reviewing a motion to quash involving solely a legal issue, this court applies a *de novo* standard of review, while a motion to quash involving factual determinations is reviewed for abuse of discretion. *State v. Hall*, 2013-0453, p. 11 (La.App. 4 Cir. 10/9/13), 127 So.3d 30, 39.

No trial shall be commenced in non-capital cases after two years from the date prosecution was initiated. La.C.Cr.P. art. 578(A)(2). However, La.C.Cr.P. art. 579(A)(1) and (3) provide for the interruption of the two-year prescriptive period if:

> (1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
>
> . . .
>
> (3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.

In this case, the trial court correctly pointed out that there was no evidence that the provisions of La.C.Cr.P. art. 579(A)(1) were applicable for the purpose of interrupting prescription. That is, there was no evidence presented that Defendant fled the state, was outside the state or was absent from his usual place of abode.

The parties dispute, however, the applicability of subsection (A)(3). It is not disputed that Defendant failed to appear at a court proceeding after receiving actual notice of the proceeding, proof of which appears in the record. As noted above, on

3

November 6, 2006, Defendant was present in court when the judge set a trial date of December 7, 2006.  Defendant seemingly conceded this point in his motion to quash, stating that on November 6, 2006, Defendant "was set for trial on December 7, 2006, and notified in open court of that date."

In *State v. Romar*, 2007-2140 (La. 7/1/08), 985 So.2d 722, the State charged the defendant by bill of information on December 16, 1997.  On January 21, 1998, the defendant appeared for arraignment and entered a plea of not guilty.  On March 5, 1998, the defendant again appeared in court and the court set a trial date of April 20, 1998.  On that date, the defendant failed to appear.  When the defendant failed to appear in court for a second time, the trial court ordered his surety bond forfeited, his personal surety bond revoked, and issued an attachment for his arrest.  It was not until over eight years later that the defendant reappeared in court on October 6, 2006, in connection with his arrest on a separate charge and execution of the open attachment for him.  On January 18, 2007, the defendant filed a motion to quash on the basis that the two-year time limit for bringing him to trial had expired.  The trial court granted the motion and the Louisiana First Circuit Court of Appeal affirmed.  The Louisiana Supreme Court reversed.

In reaching its decision, the state high court first recognized the two-year limitation enunciated in La.C.Cr.P. art. 578(A)(2), and that the burden is generally on the State to make a showing that it exercised due diligence in discovering the whereabouts of a defendant.  *Id.*, 2007-2140, p. 3, 985 So.2d at 725.  However, the Supreme Court then recognized a shift in the law in 1984 when the legislature amended La.C.Cr.P. art. 579 to add a third basis for interrupting the two-year statute of limitation, i.e., when a defendant fails to appear at any proceeding for which he has received actual notice, proof of which appears in the record.  The

4

question became whether or not the State retained this same burden of proof under the "new" provisions of La.C.Cr.P. art. 579A(3) and the court determined that it did not, stating:

> [Louisiana Code of Criminal Procedure article] 579(A)(3) does not impose on the state the affirmative duty to search for a defendant who has failed to appear for trial after receiving actual notice. The 1984 amendment of La.C.Cr.P. art 579 made a defendant's contumacious failure to appear for trial after receiving notice, a direct contempt of court, La.C.Cr.P. art. 21(A)(1), a ground of interruption of the time limits in La.C.Cr.P. art. 578 for bringing him to trial, without regard to whether he thereby intended to avoid prosecution altogether by rendering himself a fugitive from justice, or whether he had otherwise placed himself beyond the control of the state to secure his presence for trial. In the present case, an interruption of the time limits occurred when defendant failed to appear for trial on April 18, 1998, for which he received actual notice in court at the pre-trial hearing conducted on March 5, 1998.

*Romar*, 2007-2140 at p. 6, 985 So.2d at 726.

Following *Romar* and its progeny, this Court has likewise determined the two-year prescriptive period interrupted by virtue of the actual notice provisions of La.C.Cr.P. art. 579(A)(3), without regard to the State's action or inaction in ensuring the defendant's appearance at the proceeding for which he received actual notice. Specifically, in *State v. Williams*, 2011-1231 (La.App. 4 Cir. 5/23/12), 95 So.3d 554, there was evidence, though no definitive proof, that the defendant, at the time he was supposed to be in Orleans Parish Criminal District Court for a bond hearing on May 5, 2005, may have been incarcerated in Jefferson Parish. This Court nevertheless found prescription to be interrupted on May 5, 2005, the date the defendant failed to appear for a proceeding for which he received actual notice, as "the State had no affirmative duty to search for a defendant after he failed to appear at the May 5, 2005 bond hearing." *Id.*, 2011-1231, 8, 95 So.3d at 559.

5

*State v. McQuirter*, 2012-0486 (La.App. 4 Cir. 1/23/13), 108 So.3d 370, presented facts similar to *Williams*. The defendant was unable to appear in court despite having received actual notice to do so because she was incarcerated in another parish. The *McQuirter* court denied the defendant's motion to quash despite a delay of almost nine years in bringing her to trial, reasoning:

> The record before this Court shows that the [defendant] received notice in open court on June 24, 2003 to appear on July 14, 2003, and that she failed to do so. Because we find that the State has carried its burden of proving that the [defendant] received adequate service, there was no basis to quash the bill on statutory grounds. Further, we do not find that the State had an obligation to bring the [defendant] to trial while she was incarcerated in Jefferson Parish once the prescription period was interrupted when [defendant] failed to appear in court. See *State v. Williams*, 2011-1231, pp. 6-7 (La. App. 4 Cir. 5/23/12), 95 So.3d 554, 558, (whereby this [c]ourt held that the State is under no obligation to locate a defendant who was subsequently incarcerated in another parish once the prescriptive period has been interrupted by record proof of actual notice.)

*McQuirter*, 2012-0486, 9-10, 108 So.3d at 375-76.

Another case in which a defendant's failure to timely appear for trial was precipitated by his incarceration in another jurisdiction is *State v. Anderson*, 2013-0978 (La.App. 4 Cir. 1/30/14), 132 So.3d 1265. In that case, the defendant was in court with counsel when his trial was continued to October 14, 2009. The defendant failed to appear for trial on October 14, 2009. Over three years later, on November 26, 2012, the defendant filed a *pro se* motion to quash the bill of information for failure to timely prosecute, stating that he was currently incarcerated at Jackson Parish Correctional Center ("JPCC"). The Court noted, however, that there was no evidence the motion was ever filed or that the State was served with the motion. Thereafter, on January 24, 2013, a motion and order for writ of *habeas corpus ad prosequendum* was filed by the State and signed by the court for the defendant to be transported for a hearing on February 6, 2013, from

6

JPCC. The defendant failed to appear in court on February 6, 2013 and on March 5, 2013. On March 22, 2013, defense counsel appeared without the defendant and filed a motion to quash based on the running of prescription and, on that date, the trial court granted the motion without offering written reasons.

This Court reversed. First, the Court found that the two-year prescriptive period was interrupted on October 14, 2009, when the defendant failed to appear for a court proceeding for which he received actual notice. Thereafter, the State was under no obligation to find the defendant, but the defendant did submit notification, via his *pro se* motion to quash, that he was in custody at Jackson JPCC and, on January 24, 2013, the State moved to have defendant transferred to Orleans Parish Criminal District Court. At that point, prescription began to run anew, but was interrupted again by virtue of the defendant's March 22, 2013 motion to quash. Thus, the Court concluded that the "defendant's statutory right to a speedy trial has not been violated and that the delay was occasioned by his failure to appear for trial after being given actual notice in open court." *Anderson*, 2013-0978, p. 11, 132 So.3d at 1272.

Defendant admits in his brief that prescription was interrupted on December 7, 2006, when he failed to appear in court after receiving actual notice of his scheduled court appearance. However, Defendant states that on that same date, prescription began to run anew by virtue of the State's writ of *habeas corpus ad prosequendum* directing that the Warden of JPP produce Defendant. According to defendant, a State's writ of *habeas corpus ad prosequendum* constitutes proof of the State's knowledge of Defendant's whereabouts, and as such, sufficient to start prescription running anew, per the reasoning of *State v. Stewart*, 2015-1845 (La. 5/12/17), 219 So.3d 306.

7

In *Stewart*, the defendant received actual notice of his scheduled court appearance on May 17, 2012, but failed to appear. *Id.*, 2015-1845, p. 2, 219 So.3d at 307. His counsel did appear and informed the court that the defendant was in federal custody. *Id.* On July 23, 2012, the state filed a writ of *habeas corpus ad prosequendum* directed to the United States Marshal Service for the Eastern District of Louisiana to secure the defendant's appearance, but he again failed to appear. *Id.* One year later, on July 23, 2013, the State filed a second writ of *habeas corpus ad prosequendum* directed to the specific penitentiary in Arkansas where the defendant was actually serving his federal sentence, yet he again failed to appear. *Id.* In February, 2014, following several more continuances, the trial court issued an alias capias for defendant. *Id.* Thereafter, on April 30, 2014, at a bond forfeiture hearing, evidence in the form of "a certificate of incarceration" was submitted to the court verifying that the defendant was in federal custody at a specific location in Arkansas. *Id.* The defendant filed a motion to quash on speedy trial grounds, which the district court granted. *Id.*, 2015-1845, p. 2, 219 So.3d at 308. This Court reversed that ruling, finding that prescription did not commence to run anew until April 30, 2014, when evidence was presented informing the State of defendant's exact location. *Id.*

The Louisiana Supreme Court acknowledged the well-established rule that the State, under La.C.Cr.P. art. 579(A)(3), has no affirmative duty to search for a missing defendant. *Id.*, 2015-1845, p. 3, 219 So.3d at 308. "Rather, the limitations period begins to run anew only when the [S]tate receives notice of an incarcerated defendant's custodial location. *See, e.g., State v. Baptiste*, 08-2468 (La. 6/23/10), 38 So.3d 247 (limitations period did not begin to run anew until authorities from parish in which defendant was incarcerated contacted authorities where charges

8

were pending and informed them of defendant's custodial status and location)." *Id.* Applying this rationale to the facts, the Supreme Court determined that July 23, 2013 date restarted the prescription clock based on the existence of proof that the State was aware of defendant's specific location as evidenced by the filing of the *habeas corpus ad prosequendum. Id.*, 2015-1845, p. 4, 219 So.3d at 308.

In the case at hand, the State, on December 7, 2006, filed its *habeas corpus ad prosequendum* directing the Warden of JPP to produce Defendant in Orleans Parish Criminal District Court on December 18, 2006, evidencing that the State was aware of defendant's specific location on that date.[1] As stated by the Supreme Court in Stewart,

> Though we maintain that the state has no duty to take affirmative steps to locate an absent defendant, we also note that in circumstances such as these, in which the state has become aware (whether by its own efforts or otherwise) of an absent defendant's location, that awareness is sufficient in a case initiated before Subpart C's effective date [2013] to trigger the commencement of a new limitations period. Thus, because the record supports a finding that the state was aware of defendant's custodial location [on a specific date], the limitations period of La.C.Cr.P. art. 578 began to run anew on that date.

*Id.*, 2015-1845, p. 4, 219 So.3d at 309.

Presumably, sometime after December 18, 2006, but before January 17, 2007, the Defendant was released from JPP, as the deputy clerk's notes that Defendant was not in JPP and therefore could not be produced for the once-again rescheduled conference date. The State further indicated it was unable to locate Defendant in any Louisiana facility on February 12, 2007. However, there is no indication that the Defendant received actual notice for subsequent dates on which

---

[1] While the dissent suggests that there is contradictory information regarding the Defendant's location evidenced in the court minutes, the relevant inquiry per *Stewart* is whether the State possessed knowledge of a defendant's specific location. Though the trial court put defendant on the jail list to be produced, the State evidenced its knowledge of the Defendant's specific location, as the State did in *Stewart*, by filing a *habeas corpus ad prosequendum* directed to a specific custodial institution.

to appear after the State failed to have him produced from JPP which would operate to interrupt the prescriptive period in accordance with La.C.Cr.P. art. 579(A)(3).

Following this reasoning, we cannot say the trial court abused its discretion in making a factual determination that the State was aware of Defendant's specific location when it filed its *habeas corpus ad prosequendum*. Though Defendant failed to appear for a scheduled appearance for which he received notice, evidence existed of the State's knowledge of Defendant's specific location, which started the prescription period anew. More than two years' time has elapsed since the State demonstrated such knowledge, and no subsequent events interrupted that period.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

**AFFIRMED**

10