DANIEL L. DYSART, Judge.
_JjThis appeal concerns the time limitations for commencing trial against a defendant and whether, under the circumstances of this case, the failure of defendant, Chaka Stewart, to appear due to his incarceration in another state interrupted that time limitation. The trial court found that no such interruption occurred and accordingly, granted Mr. Stewart’s motion to quash, a ruling the State now appeals. For the reasons, that follow, we reverse the trial court’s judgment and' remand this matter for further proceedings.
FACTUAL AND PROCEDURAL HISTORY
Defendant, Chaka Stewart was charged by bill of information dated June 29, 2011 with one count of possession of marijuana, second offense, one count of possession with the intent to distribute heroin, and one count of possession with the intent to distribute cocaine. At his July 6, 2011 arraignment, Mr. Stewart pleaded not guilty. He filed motions to suppress the evidence and statements which were de *467 nied after a hearing on July 28, 2011. That same day, the trial court conducted a preliminary examination, at the conclusion of which, the trial court found probable | acause as to the first and third counts, but as to the second count, found probable cause only as to simple possession of heroin. Mr. Stewart’s bond was reduced as to count two only and trial was scheduled for September'12,2011.
On August 29, 2011, Mr. Stewart’s counsel appeared in court and orally moved to reduce Mr. Stewart’s bond. At his request, the bond hearing was set for September 12, 2011. Because court was not in session that date, the hearing was rescheduled to September 14, 2011, at which time, both Mr. Stewart and his counsel appeared.
Several appearances were made by defense counsel on Mr. Stewart’s behalf in September with respect to the bond issue. Thereafter, on September 30, 2011, Mr. Stewart appeared in court with his counsel for a status hearing which was reset for November 10, 2011. As the minute entry reflects, Mr. Stewart was notified in court of the date of status hearing. The minute entry further notes: “[s]end notice to defense counsel. Send notice to surety.”
Mr. Stewart again appeared for the status hearing on November 10, 2011, at which time he moved, jointly with the State, for a continuance. The matter was continued to January 19, 2012. Mr. Stewart was again notified of this date at that time and notices were to be sent to defense counsel and the surety.
Mr. Stewart appeared in court again on January 19, 2012, January 24, 2012, February 9, 2012 and March 27, 2012 and on each of these dates, the hearings were continued to later dates. The docket entries for each of these hearings note that Mr. Stewart' was notified of the next hearing date, while notices were to be | ssent to defense counsel and the surety. The next entry, dated April 17, 2012 notes that “[a]s to defendant, Chaka Stewart: hearing on motions moot — re-set to stay with companion case.” The motion hearing was next set for May 17, 2012.
At the May 17, 2012 hearing, it was noted that Mr. Stewart “is in federal custody and was not brought into open court. State to file a writ to secure [Mr. Stewart’s] presence. A motion hearing was scheduled for June 27, 2012. Notices were to be sent to Mr. Stewart’?s counsel and Mr. Stewart was placed on the jail list.”[1]
At the June 27, 2012 conference, it was again noted that Mr. Stewart was in federal custody and a pre-trial conference was scheduled for July 23, 2012. At that July 23 conference, the State moved for a writ of habeas corpus ad prosequendum[2] which was granted by the trial court. The matter was continued to August 13, 2012. Notice was sent to defense counsel and Mr. Stewart was again placed on the jail list. At the August 13, 2012 conference, attended by Mr. Stewart’s counsel, the State indicated its intent to file a writ.
*468 The pre-trial conference was continued thereafter on several occasions. The minute entries for some of those dates reflects that the State to file a writ to secure [Mr. Stewart’s] presence. At a July 23, 2013 conference, the State again filed a 14motion for a writ of habeas corpus ad prosequen-dum which was granted. The minute entry for that date directs the Clerk of Court to “process the above writ.” The conference was rescheduled for August 29, 2013. Notice was sent to Mr. Stewart’s counsel and he remained on the jail list. Because Mr. Stewart’s counsel was. not available on August 29, 2013, the matter was continued to January 15, 2014 and then, again, postponed to February 12, 2014. The minute entry reflects that it was “re-set to serve via certified mail and criminal sheriff.” Notices were sent to Mr. Stewart, his counsel and the surety.'
Mr. Stewart did’ not appear for the conference on February 12, 2014 and the trial court issued , an alias capias for his arrest. A bond forfeiture hearing was then set for February 26, 2014. The bond forfeiture hearing was continued on a number of occasions due to a lack of service of process and when it was finally held on April 30, 2014, the surety’s attorney produced a certificate of incarceration, reflecting that Mr. Stewart was in federal custody in Arkansas. The State indicated that it would “demand extradition costs” from the surety-
At the next conference date, July 2, 2014, counsel for Mr. Stewart advised that a motion to quash would be filed and it was thereafter filed on July 25, 2014. The motion sought to quash the bill of information based on the State’s failure to timely institute Mr. Stewart’s prosecution. The State opposed the motion and, following a hearing on September 26, 2014, the motion was granted.
This appeal timely followed.
[¿DISCUSSION[3]
As its sole assignment of error, the State contends that the trial court erred in granting Mr. Stewart’s motion to quash. Its argument is two-fold. First, the State contends that the trial court was without authority to conduct the hearing on the motion to quash without Mr. Stewart’s presence. Second, the State concedes that a non-capital felony prosecution must be commenced within two years of the date of the institution of prosecution;[4] however, in this matter, it ’ argues that the' time period was interrupted as per the provisions of La. C.Cr.P. art. 579 A(3).
After a review of the record and our pertinent jurisprudence, we agree with the State’s position. As discussed more fully herein, we find that the time period was, indeed, interrupted and we reverse the trial court on that basis. Because of this finding, we need not reach the issue of whether the hearing on the motion to quash was erroneously conducted in Mr. Stewart’s absence.
At the outset, we note that, when confronted with motions to quash involving mixed issues of fact and law, as in the instant matter which concerns the application of La. C.Cr.Pr. art. 578 to the particular facts of this case, we apply an abuse of discretion standard of review. State v. Dixon, 13-0396, p. 6 (La.App. 4 Cir. 7/2/14), 146 So.3d 662, 666 (“[i]n reviewing rulings on motions to. quash where there are mixed questions of fact as well as law, a trial judge’s ruling on a motion to quash is discretionary and should not be dis *469 turbed absent a clear abuse of discretion.”).
| (¡Louisiana Code of Criminal Procedure article 532 allows a trial court to quash a bill of information on the basis that “[t]he time limitation for the institution of prosecution or for the commencement of trial has expired.” La. C.Cr.P. art. 532(7). The time limitation in non-capital felony cases is set forth in La. C.Cr.P. art. 578 A(2), which provides that “no trial shall be commenced nor any bail obligation be enforceable ... after two years from the date of institution of the prosecution.” As this Court recently reiterated, “[t]he two year time limitation should be given effect and mandate dismissal, ‘unless the state carries its burden of showing valid grounds to support an interruption or sufficient suspension of these time periods.’ ” State v. Tucker, 12-1668, p. 4 (La.App. 4 Cir. 10/30/13), 126 So.3d 834, 837, writ denied, 13-2603 (La.4/17/14), 138 So.3d 626, quoting State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284, 1286. The Louisiana Supreme Court explained that this burden ordinarily “ ‘requires the State to exercise due diligence in discovering the whereabouts of the defendant as well as taking appropriate steps to secure his presence for trial once it has found him.’ ” State v. Romar, 07-2140, p. 3 (La.7/1/08), 985 So.2d 722, 725, quoting State v. Bobo, 03-2362, p. 5 (La.4/30/04), 872 So.2d 1052, 1055-56.
We are further guided by the principle that:
... [T]he proper ápproach to the question of whether the defendant’s right to a speedy trial was violated is not merely a review of the dates and circumstances of the hearings, but an examination of the entire record in order to discern whether there was “palpable abuse” on the part of the trial court in granting the motion to quash.
State v. Harris, 03-0524, p. 4 (La.App. 4 Cir. 9/10/03), 857 So.2d 16,18.
|7In this case, the State instituted prosecution on June 29, 2011, by filing the bill of information. Under La. C.Cr.P. art. 578, therefore, trial should have begun on or before June 29, 2013. However, the time for period for instituting prosecution may be interrupted as is set forth in La. C.C.Pr. art. 579, which provides, in pertinent part, as follows:
A. The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state; or
(3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.
(Emphasis added).
The State contends that the time period for instituting prosecution was interrupted as of May 17, 2012. Mr. Stewart’s made numerous appearances in court from July, 2011 until his last appearance in court was on March 27, 2012, át which time, he moved jointly with the State for a continuance and a new hearing date was set for April 17, 2012. There can be no doubt that Mr. Stewart was aware of the new hearing date, as he was personally notified in court; notices were also to be sent to his counsel and the surety. It is unclear whether there was an actual |8appearanee *470 by Mr. Stewart or the State on April 17, 2012 — the minute entry and docket master simply state “[a]s to defendant, Chaka Stewart: Hearing on Motions Moot — Reset to stay with companion case.”[5] However, at that time, the hearing was continued to May 17, 2012, notices were sent to Mr. Stewart, his attorney, his probation officer and the surety; however, Mr. Stewart failed to appear in court on May 17, 2012.
This Court has held that the failure of a defendant to appear for a scheduled court date, after receiving actual notice of that date, proof of which is evident from the record, operates to interrupt the time period for bringing him to trial. State v. Williams, 11-1231, p. 8 (La.App. 4 Cir. 5/23/12), 95 So.3d 554, 559, writ denied, 12-1447 (La.1/18/13), 107 So.3d 623. See also, State v. Anderson, 13-0978, p. 10 (La.App. 4 Cir. 1/30/14), 132 So.3d 1265, 1271. As the Louisiana Supreme Court noted, “[t]he burden under La. C.Cr.P. art. 579 A(3) ... falls not on the state to show that defendant had placed himself outside of its control to secure his presence at trial but on defendant and his sureties to avoid the consequences of his failure to appear in court after receiving notice, and one of those consequence[s] ... is the interruption of the time limits placed on trial.” Romar, 07-2140, pp. 7-8, 985 So.2d at 727.[6]
|9Here, the record indicates that Mr. Stewart was given actual notice on March 27 of the next motion date (April 17, 2012) and notices were sent to indicate that the hearing date was being rescheduled to May 17. It is clear, therefore, that the time period for commencing trial under Article 578 was interrupted by Mr. Stewart’s failure to appear in court on May 17, 2012.
The record reflects that the State made efforts within a couple of months of the date of the interruption to secure Mr. Stewart’s appearance in the trial court. On July 23, 2012, the date of a pre-trial conference, for example, the State filed a motion for a writ of habeas corpus ad prosequendum, which the trial court granted.
The record does not contain any documentation which demonstrates that any action was taken in response to the trial court’s grant of the writ of habeas corpus ad prosequendum.
Between that time and June 12, 2013, the pre-trial conference was rescheduled five times (Mr. Stewart’s counsel appeared for at least 3 of these conferences; as to the other two, the record does not reflect whether appearances were made by either Mr. Stewart’s counsel or the State). The record does not reflect on whose motions the conferences were continued, although we note that at the June 12, 2013 conference, Mr. Stewart’s counsel appeared and, at the request of the State, the conference *471 was continued to July 23, 2013. There was no objection to this continuance.
The State again filed a motion for a writ of habeas corpus ad prosequendum at the July 23, 2013 conference, which was, again, granted by the trial court. The |inminute entry for that date further indicates that the trial court directed the clerk of court to “please process the above writ” and the matter was continued to August 29, 2013. There is nothing in the record to indicate that the clerk of court responded to the directive of the trial court to process the writ of habeas corpus ad prosequendum.
The record does not reflect whether the State or defense counsel appeared for the August 29, 2013 date. The court rescheduled the hearing to October 23, 2013. On that date, because defense counsel was unavailable, the trial court rescheduled the conference to January 15, 2014, at which point, it was again continued to February 12, 2014. It was at that point that the trial court issued an alias capias and set a bond forfeiture hearing for February 26, 2014 (which was continued to March 26, 2014 and then to March 28, 2014; the record does not reflect at whose request these continuances were granted). Because service of process for the bond .forfeiture hearing had not been accomplished, the matter was continued to April 30, 2014, at which time, the surety provided the trial court with a copy of a certificate of Mr. Stewart’s incarceration.
At the pre-trial conference on July 2, 2014, defense counsel advised that the motion to quash would be filed.
While we have found that the time period for commencing trial under Article 578 was interrupted by Mr. Stewart’s failure to appear in court on May 17, 2012, we note that, once interrupted, “the periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no | ^longer exists.” La. C.Cr.P. art. 579 B. Thus, the crucial determination to be made in this case is the date on which the interruption of the time limitation ceased (if it had, in fact, ceased).
Mr. Stewart takes the position that his incarceration in federal prison, of which the State was aware as of May 17, 2012 (the date on which the first minute entry indicates that Mr. Stewart was “in federal custody”),[7] did not interrupt the time limitation for bringing him to trial. The State, on the other hand, contends that La. C.Cr.P. art. 579 C required Mr. Stewart to file a certificate of incarceration into the record in order for the time limitation to recommence. In the alternative, the State argues that in the event that the certificate of incarceration, filed by the surety on April 30, 2014, satisfies the requirements of La. C.Cr.P. art. 579 C, the cause of the interruption ceased on that date; accordingly, the State has until April 16, 2016 to bring Mr. Stewart to trial.
The provision on which the State relies is subpart C of Article 579, which provides:
C. If the defendant fails to appear in court pursuant to any provision of this Article and the defendant is subsequently arrested, the periods of limitations established by Article 578 of this Code shall not commence to run anew until the defendant appears in person in open court where the case on the original charge is pending, or the district attorney prosecuting the original charge has notice of the defendant’s custodial location. For purposes of this Paragraph, *472 “notice” shall mean either of the following:
|1¾(1) Filing in the court record by either the defendant or his counsel advising the court of his incarceration with a copy provided to the district attorney and certification of notice provided to the district attorney.
(2) Following. the seventy-two hour hearing provided by Article 230.1 of this Code, actual notice of arrest is provided to the district attorney and filed in the record of • the proceeding of which the warrant against the defendant was issued.
While there are no cases interpreting this provision, it is readily apparent that it was enacted to put an end to issues concerning (1) the interruption of the time periods set forth by .Article 578 when a defendant has been arrested (and/or convicted) in another jurisdiction or on a different charge, and (2). the State’s obligation to monitor a defendant’s whereabouts under those circumstances. Mr. Stewart takes the position that a defendant’s incarceration in another jurisdiction, alone, does not interrupt the time limitations. Mr. Stewart cites, as an example, the case of State v. Quinones, 03-907 (La.App, 5 Cir. 12/30/03), 864 So.2d 824, 828, which noted that, where a “surety [had moved] to set aside [a] forfeiture asserting that the Defendant was in federal custody in Orleans Parish Prison at the time of his' non-appearance,” “[t]he State [was] put on notice of the Defendant’s whereabouts. Interruption ends. The new prescriptive period begins
Other cases have held that the State has no obligation to bring a defendant “to trial while she was incarcerated in Jefferson Parish once the prescription period was interrupted when [she] failed to appear in court.” State v. McQuirter, 12-0486, p. 10 (La.App. 4 Cir. 1/23/13), 108 So.3d 370, 376, citing State v. Williams, 11-1231, pp. 6-7 (La.App. 4 Cir. 5/23/12), 95 So.3d 554, 558. The McQuirter Court 11sfound the period of limitations to have been interrupted for over seven years while the defendant was incarcerated, despite the State’s admission “that it made no attempt to locate her during that time.” Id., p. 9, 108 So.3d at 375. The Court rejected the McQuirter defendant’s contention that “on the day before her sentence ended, paperwork had already been prepared to have her transported to Orleans Parish Criminal Court, proving that the authorities had continuing access and could have issued a writ to have her brought to court at any time.” Id.
Based on McQuirter, therefore, in this case, even though the State had knowledge that Mr. Stewart was “in federal custody,” (albeit not in the form of actual documentation in the record until April, 2014), it had no obligation to bring Mr. Stewart to trial while he. was incarcerated in Arkansas.
Furthermore, the addition1 of Subpart C to Article 579 eliminates any doubt as to when an interruption of the time period for bringing a defendant to trial ends. It reheves the State of the obligation to search for a defendant who fails to appear for a scheduled court date and places the burden on a defendant who is subsequently arrested to take affirmative steps to end that interruption. Under Subpart C, the defendant may do so by either appearing in open court or providing “notice” to the district attorney “of the [his] custodial location.” La. C.Cr.P. art. 579 C. Notice, as defined in this part “shall mean ... [filling in the court record by either the defendant or his counsel advising the court of his incarceration with a copy provided to the district attorney and certification of notice provided to the district attor *473 ney.” La. C.Cr.P. art. 579 C(l)(emphasis added).
|uWe note that the language in La. C.Cr.P. art. 579 C uses the mandatory term “shall,” in defining “notice” and, for purposes of statutory construction, this denotes a mandatory duty. See In re Succession of Boyter; 99-0761, p. 10 (La.1/7/00), 756 So.2d 1122, 1129. Accordingly, only a defendant or his counsel may file notice of his incarceration into the court record for the period of limitations to “commence to run anew.” Had the legislature intended any other construction, it could simply have eliminated the phrase “by either the defendant or his counsel.”
In this matter, at no time did either Mr. Stewart or his counsel file anything into the record to confirm- his incarceration elsewhere. Accordingly, we find that Mr. Stewart took no affirmative steps to document his incarceration so as to recom-rhence the time limitation of Article 578 within the meaning of Article 579 C(l).
The second paragraph of Article 579 C is more problematic. It defines “notice” as the filing “in the record of the proceeding of which the warrant against thé defendant was issued” actual notice of the arrest “[flollowing the seventy-two hour hearing provided by Article 230.1 of this Code.”[8] La. C.Cr.P. art. 579 C(2). Notice of the arrest must also be provided to the district attorney at the same time. The Louisiana Supreme Court indicated that “[t]he primary requirement of [Article 230.1] is that an arrested person be brought before a judge promptly. The seventy-two hour period is the outer limit of what constitutes promptness.” State v. Reed, 390 So.2d 1314, 1316 (La.1980). While it is unclear what the Legislature intended by the inclusion of subpart C(2) to Article 579, a literal reading of it suggests that, as long as actual notice of a defendant’s arrest is filed into the record after the seventy-two hour period for bringing a defendant before a judge under Article 230.1, the interruption of the time limitation for bringing the defendant to trial ceases.
Article 579 C(2) does not indicate by whom notice of the defendant’s subsequent arrest must to be made; rather, it suggests that any notice filed in the record suffices. As that provision is applied to the instant matter, therefore, notice of Mr. Stewart’s subsequent arrest was filed into the record by the surety on April 30, 2014. Accordingly, the interruption of the time limitation for bringing Mr. Stewart commenced to run anew on that date. It follows that the State has until April 30, 2016 to bring Mr. Stewart to trial,
We recognize that Subpart C was enacted on May 23,2013 and became effective on August 1, 2013, after the charges against Mr. Stewart were instituted. The State, both in its opposition to the Motion to Quash and in its appellate brief, maintains that the provision is retroactive and applies to this case. Mr. Stewart has not addressed the issue of its retroactivity. We agree with the State that the provision is procedural in nature and applies retroactively to this matter.
The general rule regarding retroactivity of laws is codified in La. C.C. art. 6, which provides as follows:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural |1fiand interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
*474 In State v. Morgan, 09-1395, pp. 9-10 (La.App. 4 Cir. 6/23/10), 44 So.3d 292, 299, aff'd, 10-1728 (La.11/19/10), 48 So.3d 274, this Court explained our jurisprudence setting forth the guidelines in determining whether a law is to be applied retroactively:
In absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary. La. Civ. Code art. 6. In State v. Washington, 2002-2196, p. 2 (La.9/13/02), 830 So.2d 288, 290, at issue before the Louisiana Supreme Court was whether to apply a pre-revision or amended version of an article of the Louisiana Code of Criminal Procedure. The Supreme Court held that a two-part inquiry under La. Civ. Code art. 6 was required in deciding whether a law should be applied retroactively. First, “it must be ascertained whether the enactment expresses legislative intent regarding retrospective or prospective application.” Washington, p. .2, 830 So.2d at 290. “If such intent is expressed in the legislative history, the inquiry ends.” Id.
If no such intent is expressed, then the second step is invoked, which is that the law must be classified as either substantive, procedural, or interpretive. Id., citing Sudwischer v. Estate of Hoffpauir, 97-0785 (La.1997), 705 So.2d 724, 728. Substantive laws are laws that impose new duties, obligations, or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones. Interpretive laws clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of laws. Washington, supra, p. 3, 830 So.2d at 290. The Washington court held that the article of the Code of Criminal Procedure at issue was procedural and would therefore be applied retroactively. Id.
See also Jacobs v. City of Bunkie, 98-2510, p. 8 (La.5/18/99), 737 So.2d 14,20.
|17In Morgan, at issue was the applicability of a 2008 amendment to La. C.Cr.P. art. 648 which provided that a defendant who was found to be “incompetent and unlikely in the foreseeable future to be capable of standing trial,” was to be “released or remanded to the custody of the Department of Health and Hospitals which, within ten days exclusive of weekends and holidays, may institute civil commitment proceedings ... or release the defendant.”[9] La. C.Cr.P. art. 648 B(3). Until the time of the commitment proceedings, the defendant was to remain in custody. Id. Prior to the enactment of this provision in 2008, once it was determined that there was no substantial probability that a defendant would attain the capacity to proceed to trial in the foreseeable future, the State had to either institute civil commitment proceedings or release the defendant.
Finding the amendment to be retroactive, the Morgan Court noted “that articles of the Code of Criminal Procedure are procedural in nature and are thus applied retroactively.” Id., 09-1395, p. 11, 44 So.3d at 299. The Court then noted that *475 the amendment was not “a substantive law, as no new duties, obligations, or responsibilities are placed on any party, nor any new rules, rights, or duties created or changed” and it did “not relate back to any originally enacted law, and [was] therefore not interpretive.” Id. Instead, the Court found that the “newly required act of remanding or releasing a permanently incompetent defendant to the Department of Health and Hospitals” to create “a procedural mechanism that the Louisiana Legislature has enacted if a trial court determines that an incompetent defendant is ‘unlikely in the foreseeable future to be capable of standing trial’.... In essence, it provide[s] for procedure after mental incapacity.”’ Id.
|1RIn this matter, the Legislature did not address the issue of whether the amendment to Article 579, adding subpart C, was to have prospective or retroactive application. Applying the principles set forth herein, we find the amendment to be procedural in nature. Article 579 A discusses the manners by which the time limitation for bringing a defendant to trial may be interrupted. Article B indicates that, once the interruption no longer exists, the time limitation begins to run anew. However, neither Subpart B nor any other article specifies exactly how “the date the cause of interruption [is deemed to] no longer exist[ ].”
We read subpart C to merely clarify the meaning of subpart B by explaining one manner by which an interruption of the time limitation may end. It creates no new substantive law; while it provides a definitive mechanism for an interruption to cease, it is not the only means by which an interruption ends. As Subpart C indicates, the time limitation can run anew when “the defendant appears in person in open court where the case on the original charge is pending.” This is merely a codification of the previous jurisprudential rule that a defendant’s appearance in court causes the interruption of the time limitations to end. See, e.g. State v. Jones, 13-1216, p. 7 (La.App. 4 Cir. 5/7/14), 144 So.3d 1092, 1096 (where defendant failed to appear in court despite actual notice, when he “appeared [a month and a half later with counsel] the cause of interruption ceased, and the two-year time period began to run anew”); State v. Francis, 07-0480, p. 8 (La.App. 4 Cir. 1/30/08), 977 So.2d 187, 193 (the “interruption did not cease until ... the defendant made an appearance”); Bomar, (which found that the limitation for prosecuting a defendant who failed to appear after receiving notice of trial date began to run anew when he was arrested and appeared in court).
1 ^Likewise, the amendment to Article 579 adding subpart C is not interpretive insofar as it did “not relate back to any originally enacted law.” Morgan, 09-1395, p. 11, 44 So.3d at 299. Rather, it creates a “procedural mechanism” by which, once interrupted, the time limitation for bringing a defendant to trial begins to run anew upon an affirmative showing in the record of notice that a defendant has been “subsequently arrested.” Again, we recognize, as this Court held in McQuirter, that the State has no “obligation to bring [a defendant] to trial [who has been] incarcerated [elsewhere] ... once the prescription period was interrupted.” McQuirter, 12-0486, p. 10, 108 So.3d at 376. We, therefore, find that the amendment “relate[s] to the form of the proceeding or the operation of laws.” Morgan, 09-1395, pp. 9-10, 44 So.3d at 299 and as such, is procedural and applies retroactively.
CONCLUSION
For the reasons stated herein, we find that the time period for bringing Mr. Stewart to trial was interrupted by his failure to appear in court on May 17, 2012, *476 despite his having received actual notice to appear, proof of which is; evident from the record. That period remained interrupted until April 30, 2014, when, pursuant to La. C.Cr.P. art 579 C(2), the surety filed 'into the record a certificate of Mr. Stewart's incarceration in Arkansas. Accordingly, the State has until April 30, 2016 within which to' bring Mr. Stewart to trial. The trial court’s judgment is reversed and this matter is remanded for further proceedings.
REVERSED
LOBRAÑO, J., concurs in the result.

. "The jail list is a listing issued by the trial court directed- to the sheriff to transport all persons named on the list and in the sheriff's custody from parish prison to the court on a particular day.” State v. Greathouse, 13-1295, p. 2, n. 7 (La.App. 4 Cir. 4/16/14), 140 So.3d 244, 246, writ denied, 14-1013 (La. 1/16/15), 157 So.3d 1127.

. A writ of habeas corpus ad prosequendum " ‘[a] writ which issues when it is necessary to remove a prisoner in order to prosecute in the proper jurisdiction wherein the fact was committed.’” State v. Williams, 11-1231 (La. App. 4 Cir, 5/23/12), 95 So.3d 554, 560, citing State v. Terry, 458 So.2d 97, 99, n. 2 (La. 1984) (quoting Black's Law Dictionary 837 (4th ed. 1968)).

. We have reviewed the record for errors patent and found none. See La. C.Cr.P. art. 920(2).

. See La. C.Cr.P. art. 578 A(2).

. Mr. Stewart had another prosecution pending at the time arising from a bill of information dated August 3, 2011 charging him with drag racing resulting in serious bodily injury.

. The Romar Court likewise noted that "[t]he 1984 amendment of La. C.Cr.P. art. 579 [adding the third ground of interruption-that the defendant 'fails to appear at any proceeding pursuant to actual notice, proof of which appears of record’] made a defendant’s contumacious failure to appear for trial after receiving notice, a direct contempt of court, La. C.Cr.P. art. 21(A)(1), a ground of interruption of the time limits in La. C.Cr.P. art. 578 for bringing him to trial, without regard to whether he thereby intended to avoid prosecution altogether by rendering himself a fugitive from justice, or whether he had otherwise placed himself beyond the control of the state to secure his presence for trial.” Id., 07-2140, p. 6, 985 So.2d at 726..

. While the minute entry reflects that Mr. Stewart was "in federal custody,” there is no documentation otherwise in the record confirming his incarceration until the surety produced a certificate of incarceration at the bond forfeiture hearing on April 30, 2014.

. Article 230.1 is entitled "Maximum time for appearance before judge for the purpose of appointment of counsel; court discretion to fix bail at the appearance; extension of time limit for cause; effect of failure of appear-anee.”

. The Morgan case involved several defendants whose cases involved the same issue and thus, were combined for purposes of addressing the 2008 amendment. All of the defendants had been charged with offenses dating from 1979 through 2005.