JOY COSSICH LOBRANO, Judge.
| defendant, Vanessa 0. Pierre (“Defendant”) was arrested on February 7, 2005 on an outstanding warrant relative to: (1) two counts of theft of merchandise valued between one hundred and five hundred dollars; (2) two counts of forgery; and (3) one count of identity theft. On the same date, she was released from custody on a Return on Recognizance bond (“ROR bond”)[1] in the amount of seventeen thousand dollars ($17,000.00). The address provided by Defendant and listed on the bond was 2412 Lamanche Street, New Orleans, LA 7011L
On April 15, 2005; the State of Louisiana (“State”) charged Defendant by bill of information with two counts of theft of merchandise valued in the amount in excess of five hundred dollars in violation of La. R.S. 14:67(B), in Orleans Parish Criminal District Court Case 458-362.[2]
| ¡Arraignment was set for May 13, 2005.[3] On that date, Defendant appeared and entered a plea of not guilty. A status hearing was initially set for May 16, 2005, but due to the court closing, it was reset for June 2, 2005. On June 2, 2005, Defendant appeared for a status hearing with counsel. On'that,date,, a motions hearing was set for July 5, 2005 and Defendant was notified of the hearing date in court. Service with notice of the July 5, 2005 appearance date was also unsuccessfully attempted on June 7, 2005 but the process server noted on the return that the “Subject Moved.” The . State filed a motion to continue trial, which was also set for July 5, 2005. On July 5, 2005, Defendant failed to appear for, the motions hearing, and the district court issued an alias capias for Defendant’s arrest without bond. The district court continued the case without a date. Defendant was subsequently arrested on the alias capias on July 8, 2005. On July 11, 2005, defense counsel appeared without Defendant for filings, and the motions hearing was set for July 14, 2005. On July 14, 2005, Defendant appeared with counsel, waived motions, and Defendant was noti *143 fied in open court that the trial date was set for September 7, 2005. Defense counsel appeared for filings on July 29, 2005 and the district court ordered that Defendant be released on the original bond, again noting that the next court date was September 7, 2005. , Hurricane Katrina and the levee breaks impacted the area on August 29, 2005, thus trial was not held on September 7,2005.
On May 30, 2006, a status hearing was set for June 28; 2006. According to the 'docket' master and the minute entry dated May 30, 2006, notice was sent to Defendant through certified mail to the address which was listed on the bond or as | ^updated by Defendant. ■ Defendant failed to appear in court for the June 28, 2006 status hearing because she was not served.[4] The district court reset the hearing for August 7, 2006. However, on August 8, 2006, a new status hearing was set for September 7, 2006. Because Defendant failed to appear in court on that date, however, on September.8, 2006, the district court issued an alias capias for Defendant’s arrest without bond, and the matter was continued without date.
According to records from the Texas Department of Criminal Justice, Defendant was convicted of aggravated assault in Texas and sentenced on March 22, 2008 to serve a term of five years. She was received into the Texas Department of Criminal Justice’s custody on June 3⅜ 2008 and released on March 22,2013.
On November 12, 2014, defense counsel appeared in Orleans Parish Criminal District Court on behalf of Defendant and reported that Defendant was in state custody in Jefferson Parish at that time. On that daté, the State filed a motion and order for writ of habeas corpus ad prose-quendum, and a pre-trial conference was set for November 18, 2014. Defense counsel filed a motion to quash the bill of information on November 13, 2014, which was set for hearing on November 18, 2014. The district court also recalled the alias capias on that date because Defendant was ■in the- custody of the sheriff and was not brought to court. On November 18, 2014, defense counsel waived Defendant’s presence. After hearing argument, the district court granted the Defendant’s motion to quash the bill of information based on untimeliness of the commencement of trial in violation of Defendant’s right to a 'speedy trial.
I ¿The State timely appeals the district court’s ruling granting Defendant’s motion to quash the ‘bill of information. After a thorough review of the record and the relevant jurisprudence, we agree with the State’s position that the statute of limitations to commence trial was interrupted, as we discuss fully below. For the reasons that follow, we find no-statutory or constitutional violation of Defendant’s right to a speedy trial. We therefore reverse the district court’s judgment and remand this matter for further proceedings.

DISCUSSION

In its sole assignment of error, the State contends that the district court abused its discretion in granting Defendant’s motion to quash. The State argues that Defendant failed to notify the district court that she had moved from the address listed on her bond, in violation of La.C.Cr.P. art. 322. The State thus argues, through no fault of its own, it was unable to obtain the presence of Defendant through legal process. The State claims that the time limitation for prosecuting Defendant set forth in La.C.Cr.P. art’. 578 should be found *144 interrupted as of the date Defendant failed to appear for the September 8, 2006 hearing and that interruption continued until, at the earliest, November 12, 2014, when defense counsel appeared in the district court and notified the court that Defendant was incarcerated in Jefferson Parish.
Defendant contends that the two year time limitation for prosecuting Defendant has clearly run. Specifically, Defendant asserts that she sent a letter to the Clerk of Court for Orleans Parish on or about May 6, 2010 in which she provided her location, date of birth and social security number, putting her in compliance with La.C.Cr.P. art. 322. Defendant contends that the limitations period would have commenced to run, therefore, as of May 6, 2010 and expired | ntwo years later on May 6, 2012. Defendant also claims that the State failed to exercise due diligence in attempting to locate her because “a simple search on NCIC[5] would have revealed her location in Texas.” Defendant appears to accept that the limitations period would have been interrupted by the effects of Hurricane Katrina, the destruction of her Ninth Ward home and her relocation to Texas.
The case mb judice concerns the application of La.C.Cr.P. arts. 578 and 579 to the particular facts set forth above. We review a district judge’s ruling on a motion to quash which involves mixed issues of fact and law, as in the instant matter, under an abuse of discretion standard. State v. Stewart, 2015-0135, p. 5 (La.App. 4 Cir. 9/9/15), 176 So.3d 465, 468-69, writ pending, 2015-1845 (La.10/9/15); State v. Dixon, 13-0396, p. 6 (La.App. 4 Cir. 7/2/14), 146 So.3d 662, 666 (“[i]n reviewing rulings on motions to quash where there are mixed questions of fact as well as law, a trial judge’s ruling on a motion to quash is discretionary and should not be disturbed absent a clear abuse of discretion.”)
Louisiana Code of Criminal Procedure article 532 allows a trial court to quash a bill of information on the basis that “[t]he time limitation for the institution of prosecution or for the commencement of trial has expired.” La.C.Cr.P. art. 532(7). The time limitation for non-capital felony cases is set forth in La.C.Cr.P. art. 578 A(2), which provides that “no trial shall be commenced nor any bail obligation be enforceable ... after two years from the date of institution of the prosecution.” This serves “to enforce the accused’s right to a speedy trial and to prevent the oppression caused by suspending criminal prosecutions over citizens for indefinite periods of time.” State v. Ramirez, 2007-0652 at p. 4 (La.App. 4 Cir. 1/9/08), 976 So.2d 204, 207. The two-year time limitation should be given ^effect and mandates dismissal, “unless the state carries its burden of showing valid grounds to support an interruption or sufficient suspension of these time periods.” State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284, 1286; Stewart, 2015-0135 at p. 6, 176 So.3d at 469.
The proper period of time to be examined in deciding the merits of a motion to quash is the time between the institution of prosecution by the State and the commencement of Defendant’s trial. See La.C.Cr.P, art. 578 A(2). The State instituted prosecution against Defendant by filing a bill of information on April 15, 2005. Pursuant to La.C.Cr.P. art. 578 A(2), trial should have commenced on or before April 15, 2007, unless it was interrupted for one of the reasons set forth in La.C.Cr.P. art. 579, which provides, in pertinent part:
*145 A. The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees, from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state; or
(8) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.
In addition, La.C.Cr.P. art. 579B provides that the periods of limitation set forth in Article 578 “shall commence anew from the date the cause of interruption no longer exists.” Stewart, 2015-0135 at pp. 10-11, 176 So.3d at 471.
Although the State does not clearly identify the provision of Article 579 upon which it relies to establish interruption, the State’s arguments appear to |7implicate both La.C.Cr.P. art. 579 A (2) and (3). The State asserts that Defendant received “actual notice” of the September 7, 2005 trial in open court and was thus aware of the charges pending against her and of her obligation to appear in court, arguably implicating La.C.Cr.P. art. 579 A (3). Moreover, the State claims that Defendant failed to update her address as required by her bond. As a result, the State asserts that it was unable to obtain legal process, “[g]iven the fact that the only address that the State had by which to effect legal service on the defendant was destroyed by Hurricane Katrina ...” This argument implicates La.C.Cr.P. art. 579 A (2).
The State next claims, however, that “[t]he defendants case ultimately fell off the trial court docket due to the impact of Hurricane Katrina” because Defendant was required to evacuate to Texas and the effects of the hurricane prevented the trial from being held- as scheduled on September 7, 2005. Thus, Defendant had “actual notice” of the September 7, 2005 trial date but, through no fault of either of the parties, was unable to appear for trial.
In State v. Brazile, 2006-1611, pp. 4-6 (La.App. 4 Cir. 5/30/07), 960 So.2d 333,335-36, this Court acknowledged that, as a result of the shutdown in operations in the Orleans Parish Criminal District Court due to the effects of Hurricane Katrina, the time limitations set forth in La.C.Cr.P. art. 678 were interrupted pursuant to La. C.Cr.P. art. 579 A(2), i.e., the defendant could not be tried because his presence for trial could not be obtained by legal process or “for any other cause beyond the control of the state.” Not decided in B'azile, however, was the question of when did the interruption caused by Hurricane Katrina cease to exist. This question was subsequently answered in State v. Hamilton, 2007-0581 (La.App. 4 Cir. 3/5/08, 980 So.2d 147), when this Court héld that June 5, 2006, the day on which | sthe first criminal jury trial in Orleans Parish Criminal District Court actually occurred after Hurricane Katrina, was the date that the reason for the interruption of time limitations ceased to exist. Therefore, based upon Brazile and Hamilton, the State would have had two years from June 5, 2006 or until June 5, 2008 to bring Defendant to trial.[6]
The State asserts, however, that interruption continued long after June 5, 2006. *146 The- State asserts that Defendant had an affirmative duty stemming from her bond obligation to provide an accurate address and to update the court with any- changes, in compliance with La.C,Cr.P. art. 322. The State claims that Defendant did not notify the court of the change in her location, and therefore argues it was prevented from providing Defendant with “actual notice” of the post-Katrina status hearing date of September 8, 2006 due to Defendant’s violation of her bond obligation to update her address.
La.C.Cr.P. art. 322 provides, in pertinent part:
A. The defendant and personal surety signing a bail bond shall write the address at which each can be served under their respective signatures and the last four digits of their social security number. The defendant and his counsel may, by joint affidavit filed of record in the proceeding in which the bond was given, appoint his counsel as his agent for service of notice to appear. The appointment shall be conclusively presumed to continue until the defendant files of record an affidavit revoking , or changing the appointment. The affidavit shall include the address at which to serve his counsel. A commercial surety shall inscribe its proper mailing address on the face of the power of attorney used to execute the bond. The agent or bondsman posting the bond shall write his proper mailing address under his signature. A bail bond shall not be set aside because of the invalidity of the information - required by this Article or for the - ■ failure to include the information required by the provisions of -this Article. - ' -
|flB. Each address provided pursuant to Paragraph A- of this Article shall be conclusively presumed to continue for all proceedings on the bond until the party providing the address changes it by filing a written declaration in the proceeding for which the bond was filed.
C. By signing the bail bond, the defendant and his surety waive any right to notice, except that provided for in Articles 844 and 349.8.
La.C.Cr.P. art. 322 (emphasis added).
Maintaining a current address is accordingly a defendant’s obligation under an existing bond. La.C.Cr.P. art. 322 E, providing that [b]y signing the bail bond, the defendant and his surety waive any right to notice, except the notice provided for in Article 344 and R.S. 15:85,’ qualifies that obligation. State v. Sorden, 2009-1416 at p. 10 (La.App. 4 Cir. 8/4/10), 45 So.3d 181, 187. Defendant clearly failed, in this case, to comply with the requirements of La. C.Cr.P. art. 322, possibly as early as in July of 2005 (when service was attempted on her Lamanche Street address, but the return noted that the “subject moved”) and certainly in the time period post-Katrina when she was residing in Texas. Additionally, pursuant to Art. 322 C, by signing the bond, Defendant waived additional notice of the rescheduled hearing date other than the notice set forth in La.C.Cr.P. art. 344 and 349.3.[7] Notice under Art. 344 is sufficient if provided to the defendant and the personal surety or the commercial surety or the agent or bondsman who posted the bond for the commercial surety and “shall be made to the address provided pursuant to Article 322.” La,C.Cr.P. art. *147 344(D).[8] Notice may be | ^either delivered by an officer designated by the court at least two days prior to the appearance date or mailed by United States mail at least five days prior to the appearance date. La.C.Cr.P. art. 344 D (1) and (2). In this case, as noted in the district court’s May 30, 2006 minute entry, notice of the rescheduled hearing date of September 8, 2006 was provided to Defendant through certified United States mail at the address which Defendant provided pursuant to Art. 322.
As a result of Defendant’s failure to comply with Article 322, the State argues that this case falls directly in line with this Court’s decision in State v. Peters, 2010-0939 (La.App. 4 Cir. 11/17/10), 52 So.3d 233, and, in accordance with' that decision, we are required to find that Defendant’s failure to update her new address with the court after Hurricane Katrina resulted in prescription remaining interrupted.
■ In Peters, the defendant was arrested on August 2, 2005 and posted a $5,000 bond. Peters, 2010-0939 at p. 1, 52 So.3d at 234. The defendant provided an address on the bond and failed to notify the court that he moved from that residence after Hurricane Katrina. On November 16, 2005, the district attorney | n charged the defendant by bill of information with one count of possession of hydrocodone. Id. Notice of arraignment was served at- the address provided on the bond, but service was never properly obtained at that location, preventing the defendant from receiving actual notice of his arraignment date. Id. The defendant predictably failed to appear. Id. We concluded that, while there was no actual notice to the defendant of the bill of information being filed; he was aware of the pending charges. Id. at p. 11, 52 So.3d at 239. Additionally, because of the defendant’s failure to perform his duty and provide a declaration of his change of address as required by La.C.Cr.P. art. 322, “the state was unable to serve him at the only address he had provided;” Id, The State argued in Peters that the defendant’s failure to update his address constituted an interruption under article 579 A(2) and, as a result, the State had no affirmative duty to search for the defendant. Id. at p. 4, 52 So.3d at 235. This Court stated:
“While it is true that Peters ... would therefore have had' no way of knowing that a bill of information had actually been filed against him, it'is also-true that the destruction and dislocation left in the wake of the-hurricane made reliable service of process difficult if not *148 impossible to accomplish at the address of Peters on record. While there was no actual notice to Peters of the bill of information filed, he was aware of the pending charges and failed to provide his change of address to the court as mandated by La.C.Cr.P. art. 322 ... Peters remained under his bond obligation, and had he complied with art. 322, the state would have been able to provide actual notice to him in a timely manner.”
Id. at p. 11, 52 So.3d at 23ÍM0. Without requiring the State to show any efforts it made to locate the defendant, this Court reversed the district court’s granting of the defendant’s motion to quash. Id. at p. 12, 52 So.3d at 240.
The State further argues that the facts in the case sub judice are even more favorable to the State than those in Peters. We find merit in the State’s argument. [ 1?In Peters, the defendant never received notice that the State had, in fact, filed a bill of information against him, thus commencing prosecution. Defendant in this case, however, has known that charges were pending against her since she was arraigned on May 13, 2005, placing her on notice that the State was proceeding with its prosecution. Moreover, although the trial date was required to be re-set as a result of the effects of Hurricane Katrina, Defendant had received actual notice of the trial date and should have anticipated that the trial date would be re-set. Moreover, had she complied with La.C.Cr.P. art. 322 and provided an updated address, she would have received notice of the September 8, 2006 rescheduled hearing date.
The Defendant, in fact, concedes that she was not in compliance with La.C.Cr.P. art. 322 and admits that an interruption of the limitations period occurred. What Defendant does not concede, however is the date when interruption of the limitations period ceased. Defendant contends that interruption should have ceased when Defendant, on May 6, 2010, allegedly sent a letter to the Clerk of Court for Orleans Parish listing her location, birth date and social security number, in an attempt to comply with La.C.Cr.P. art. 322. As evidence of this notice, Defendant submitted a copy of a similar letter to the district court which she mailed to the Clerk of Court for Jefferson Parish.[9] Defendant also submits that she sent a letter dated March 5, 2010 to the Texas Criminal Justice Department in which she asked for assistance in obtaining information about any outstanding out-of-state detainers that may be in place that would prevent her from participating in various prison | ^programs.[10] Defendant asserts that there was no detainer in place from Orleans Parish when she was released from jail in Texas, therefore, the detainer must have been cancelled as a result of her correspondence to the Clerk of Court in Orleans Parish. Based upon this correspondence, Defendant claims that prescription begin to run anew as of May 6, 2010, thus the State would have had until May 6, 2012 to bring her to trial. Therefore, Defendant argues, the district court *149 was correct in granting Defendant’s motion to quash in November of 2014 since the State had yet to bring Defendant to trial.
The State takes the position that there is no evidence that Defendant’s correspondence was ever sent to or received by the Clerk of Orleans Parish Criminal District Court. Moreover, the State argues, based upon Peters, once Defendant failed to update her address as required by her bond obligation, the State had no duty to search for her. Additionally, the State submits that the time limitation to bring Defendant to trial continued interrupted until, at the earliest, Defendant’s counsel appeared in court on November 12, 2014 and reported to the court and to the State that Defendant was currently incarcerated in Jefferson Parish.
The State further asserts that La. C.Cr.P. art. 579 C sets forth the Defendant’s notice requirements which must be met before the interruption of prescription will cease and the limitations period will commence anew. The State urges this Court to find these requirements were not met in this case.
| uDefendant’s position that prescription was interrupted in May 2010 is problematic for several reasons. First, there is simply no evidence of record to establish that Defendant ever sent such a letter to the Clerk of Orleans Parish Criminal District Court. The letter does not appear in the record; no return mail receipt, prison mail log or other such evidence has been submitted to substantiate Defendant’s claim. Moreover, while Defendant claims she did not have the case numbers of her outstanding charges, she certainly had factual knowledge of the parishes where her crimes occurred yet failed to note them in her letter to the Texas Department of Criminal Justice to énable a search for detainers. Additionally, there is no evidence to show that any detainer in Orleans Parish was cancelled, presumably as a result of receipt of Defendant’s letter or due to an inquiry from the Texas Department of Criminal Justice prompted by Defendant’s letter to them. The record shows, in fact, that the district court issued a capias for Defendant’s arrest in September of 2006 which was not recalled until November 2014.
Additionally, we reject Defendant’s argument that the State had an affirmative duty to search for her through the NCIC databank or "otherwise. “La.C.Cr.P; art. 322(A) places the responsibility of providing the clerk of court with a valid, updated address on the shoulders of the defendant,” Peters, 2010-0939 at p. 12, 52 So.3d at 240, and there is no evidence that Defendant did so in a timely and proper manner consistent with the requirements of the statute. Any duty which the State may have had to attempt to locate Defendant was thwarted by the unavailability of an updated address for service of process: Like the defendant in Peters, Defendant remained under a bond obligation and one of the consequences of her failure to comply with Article 322 is that prescription remained interrupted.
LfiThe State also argues that even if such a letter had been sent to the Clerk of Orleans Parish Criminal District Court, it would not have adequately complied with the notice requirements set forth in La. C.Cr.P. art. 579 C. As the State correctly contends, La.C.Cr.P. art. 579 C requires a defendant to take affirmative steps to document his incarceration so as to recommence the time limitation of Article 578. La.C.Cr.P. art. 579 C provides:-
If the defendant fails to appear in court pursuant to any provision of this Article and the defendant is subsequently arrested, the periods of limitations established by Article 578 of this Code’shall *150 not commence to run anew until the defendant appears in person in open court where the case on the original charge is pending, or the district attorney prosecuting the original charge has notice of the defendant’s custodial location. For purposes of this Paragraph, “notice” shall mean either of, the following:
(1) Filing in the court record by- either the defendant or his counsel advising the court of his incarceration with a copy provided to the district attorney and certification of notice provided to the district attorney.
(2) Following the seventy-two hour hearing provided by Article 230.1 of this Code, actual notice of arrest is provided to the district attorney and filed in the record of the proceeding of which the warrant against the defendant was issued.
Id. (emphasis added.)
Clearly the State- is • correct that Defendant’s May 2010 letter, even if proven to have been submitted, would not have complied with these procedures.
Although Defendant has-not raised the issue of retroactive application of La. C.Cr.P. art. 579 C, we- take notice that Subpart C of Article 579 was not enacted until May 23, 2013 and became effective bn August 1, 2013, long after the charges against Defendant were instituted -, and more than 3 years-after Defendant claims she mailed .her letter to the-Clerk of Court for Orleans Parish Criminal District Court, thus raising the issue of the retroactivity of the new law.
1 n/rhis Court, in State v. Stewart, addressed the issue of the - retroactivity of La.C.Cr.P. art. 579 C and concluded that the law could be applied retroactively, Stewart at p. 19, 176 So.3d at 475. In Stewart, the defendant failed to appear for a scheduled hearing because he was in federal custody. Stewart was given actual notice of the hearing on March 27, 2012 and failed to appear as rescheduled for hearing on May 17, 2012. After a number of continuances occurred between that time and April 30, 2014, the surety on Stewart’s bond provided the district court with a copy of a certificate of incarceration for Stewart. The State argued that, despite being notified on May 17, 2012 that Stewart was in federal custody, prescription did not begin to run anew until La. C.Cr.P. art ,579 C was complied with and a letter of .incarceration was filed, into the record by the Defendant or his counsel..
In finding the law retroactive, the Court noted the general rule regarding retroac-tivity of laws as codified in'La. C.C. art. 6, as follows:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
Stewart, 2015-0135 at pp. 15-16, 176 So.3d 465, 473. The Stewart Court also noted that the Legislature had failed to address whether Article ,579 C was to have prospective or retroactive application. Since the Court found that the law was procedural in nature and was merely enacted to clarify súbpart B of Article 579'rather than to create new law, the Court held that the amendment ‘relate[s] to the form of the proceeding or the operation of laws’ and, as such, was procedural and could be applied retroactively. Therefore, in Stewart, the Court applied Article 117579 C, a law which was enacted in 2013, to prevent the State’s 2012 notice of the defendant’s incarceration from interrupting prescription.
Here, however, the State requests that we require Defendant’s letter allegedly sent in 2010 to have complied with the *151 requirements enacted in 2013. In State v. Loyd, 96-1805, p. 11 (La.2/13/97), 689 So.2d 1321, 1328, the Louisiana Supreme Court emphasized that “[w]hen dealing with criminal (as well as civil) procedural rules, the Court applies the ‘common sense notion’ that the applicability of procedural changes depends on the posture of the case. Landgraf [v. USI Film Products,] 511 U.S. [244,] at 275 n. 29, 114 S.Ct. [1483,] at 1502, n. 29, 128 L.Ed.2d 229 [ (1994).] For example, a new rule governing the filing of complaints would not govern an action in which a complaint had already been filed. Id.”
Applying Loyd', we decline to adopt the State’s reasoning in this case that La. C.Cr.P. art. 579 C should be applied retroactively. Moreover, because we find no record evidence to support that Defendant’s May 2010 letter was actually received by the Clerk of the Orleans Parish Criminal District Court, it is unnecessary to do so. ■
Based on the above discussion, we find that the two year limitation period, which commenced to run on July 8, 2005 with the filing of the bill of information, Was interrupted when Defendant moved from the address which she listed on the bond and failed to update her address with the court. Prescription then remained interrupted until counsel appeared in court on November 12, 2014 and notified the court and the district attorney that Defendant was incarcerated in Jefferson Parish. As we find no statutory violation of Defendant’s speedy trial rights occurred, we find that the district court abused its discretion in quashing the indictment on statutory grounds.
|1s“[T]he question qf whether a speedy trial violation is statutory or constitutional involves wholly separate inquiries.” Sorden, 2009-1416 at p. 7, 45 So.3d at 186. Although the parties have not addressed the issue of whether a constitutional violation of Defendant’s speedy trial rights occurred, our jurisprudence holds that mere compliance with the statutory limitations for - commencing trials is not sufficient to establish that Defendant's constitutional speedy trial rights have not been infringed. See State v. Love, 00-3347 at p. 14 (La.5/23/03), 847 So.2d 1109, 1209; State v. Scott, 04-1142 at p. 12 (La. App 4 Cir. 7/27/05), 913 So.2d 843, 851. We therefore address whether Defendant’s speedy trial rights were constitutionally infringed.
The right to a speedy trial is set forth in both the federal and state constitutions. U.S. CONST. amend. VI; LA. Const. art. I, § 16 (see also La.C.Cr.P. art. 701(A)), In Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the U.S. Supreme Court adopted a balancing test in which the conduct of the State and the defendant are weighed for purposes of determining whether the right to a speedy trial has been violated. Courts are required to assess the following factors: (1) the length of the delay, (2) the reason for the delay, (3)' the defendant’s assertion of his right to a speedy trial, and (4) the prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. at 2192; Love, 00-3347 at p. 15, 847 So.2d at 1210. Under the rules established in Barker, none of the four factors listed above is “either a necessary or sufficient condition to the finding of a deprivation of the right to speedy-trial.”- Barker at 533, 92 S.Ct. at 2193. Instead,' they are “related factors and must be considered together ... in a difficult and sensitive balancing process.” Id.
h;)The length of the delay has been considered a triggering mechanism. Unless the delay in a given case is “presumptively prejudicial,” further inquiry into the other Barker factors is unneces *152 sary. Love, 00-3347 at p. 16, 847 So.2d at 1210. However, when a court finds that the delay was “presumptively prejudicial,” the court must then consider the other three factors. Id. In the case sub judice, we have no trouble finding that the 9.5 years which lapsed between the bill of information being filed, on April 15, 2005, until the district court’s granting of the motion to quash on November 18, 2014, would be presumptively prejudicial.[11] Thus we must address the remaining factors.
With regard to the reason for the delay, Hurricane Katrina and its effects could arguably be responsible for a delay of approximately 9 months, until the courts in Orleans Parish were once again functioning on June 5, 2006. See Hamilton, 2007-0581, 980 So.2d 147 (finding that the interruption caused by Hurricane Katrina ceased on June 5, 2006, when the first jury trial after the Katrina took place); State v. Ervin, 2008-1078 (La.App. 4 Cir. 4/1/09), 9 So.3d 303, 307 (same.) However, as explained more fully above, we find that the crucial reason for the delay was Defendant’s own failure to update her address with the court when she evacuated New Orleans and resided in Houston. Additionally, from June 3, 2008 until March 22, 2013, Defendant was incarcerated in Texas, and still had not properly notified the court of her location. No such notification occurred until November 12, 2014. Thus, although Defendant cannot be apportioned fault for the|2ntime when she was in custody in Texas or later in the custody of Jefferson Parish, the reason for the delay is mostly attributable to Defendant’s failure to comply with Article 322 by updating her address as required by her bond.
Next, we consider whether Defendant asserted her right to a speedy trial. Because Defendant did not assert her right to a speedy trial until she filed her motion to quash on Novemberl3, 2014, we find this factor also inures to the benefit of the State.
Finally, the fourth Barker factor involves an inquiry into the degree of prejudice suffered by Defendant due to the delay in prosecution. Any prejudice to a defendant must be assessed in light of her interest (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532, 92 S.Ct. at 2193. The Barker Court found that the most important consideration is whether a defendant’s defense was impaired by the delay. Id.
Again, neither of the parties have addressed whether a constitutional speedy trial violation has occurred, thus no argument has specifically been asserted to show whether Defendant has been prejudiced by the delay. Since Defendant was not incarcerated after Hurricane Katrina on these charges, no oppressive pretrial incarceration can be shown. Defendant may have harbored some anxiety over the unresolved charges but again may have been able to bring the charges to a resolution if she had honored her bond obligations. With regard to possible prejudice to Defendant’s defense, Defendant’s case involves the theft of merchandise from two businesses which allegedly occurred as a result of signing fraudulent rental agreements in order to obtain prop *153 erty under another person’s name. Thus the evidence in the case appears to be based primarily on the alleged | g1fraudulent signing of documents by Defendant rather than on eyewitnesses who may no longer be available.[12] Based on the record currently before this Court, we do not find the requisite and particularized prejudice to the defense owing to the delay in bringing this case to trial. Although the time delay in this case was presumptively prejudicial, upon careful consideration of the remaining Barker factors, we find that Defendant has failed to establish a constitutional violation of her right to a speedy trial.
Accordingly, having found neither a statutory or constitutional violation of Defendant’s speedy trial rights, we reverse the district court’s judgment granting the Defendant’s motion to quash the bill of information and remand this matter to the district court for further proceedings.
REVERSED AND REMANDED

. In State v. Sorden, 2009-1416 (La.App. 4 Cir. 8/4/10), 45 So.3d 181, this Court explained: "An'ROR bond‘is bail without a surety, La.C.Cr.P. art. 325,” Id. at p. 9, 45 So.3d at 197. Such bonds generally feature an unsecured financial obligation on the part of the released party in the event of a default. See La.C.Cr.P. art. 327 A(4).‘ Id. The primary remedy for a breach,of the bond is revocation of the bond and possible re-incarceration. See La.C.Cr.P. art. 346(1), Id.

. According to the bill of information, Defendant was charged with two counts of theft of merchandise belonging to Color Tyme Rent to Own. However, according to the arrest register, the first count concerned the theft of merchandise belonging to United Furniture and the second count concerned the theft of merchandise belonging to Color Tyme Rent to Own.

.Defendant was domiciliary served with notice of the May 13, 2005 appearance date at the 2412 Lamanche Street, New Orleans, LA 70117 address.

. According to Defendant's brief, her Ninth Ward home was destroyed in the storm and she was evacuated to and continued to reside after the- storm in Houston, Texas.

. NCIC refers to the National Crime Informátion Center's computerized data base.

, Defendant appears to accept that interruption of the time limitations to commence trial occurred as a result of the hurricane and her non-compliance with Art. 322 since she argues, for reasons to be discussed herein, that interruption ceased on May 6, 2010.

. Notice under 349.3 is inapplicable here as it pertains only to the notice of the judgment of .bond forfeiture.

. We acknowledge that in State v. Billiot, 2015-0398 (La.App. 4 Cir. 12/2/15), 182 So.3d 300 (Lobrano, J. concurs in the result), the majority of the Court found that notice provided'under La.C.Cr.P. art. 344(D) was insufficient under the facts of that case to interrupt prescription. In Billiot, the defendant was arrested and then released on bond prior to being charged in a bill of information with one count of forgery. The address on the bond was listed as "530 Egeron” and the subpoena for Billiot’s appearance at his arraignment was sent to "530 Engeron.” The defendant failed to appear for arraignment and a capias was issued for his arrest. More than eighteen years later, the defendant was arrested and filed a motion to quash the bill of information. The State argued that service by first class mail under Article 344(d) to the address provided on the bond was sufficient to satisfy the "actual notice” requirement for prescription to be interrupted under La.C.'Cr. P. art. 579 A(3), It seems that the majority in Billiot, however, was concerned that the face of the subpoena was marked with a notation that the subpoena had been sent by certified mail yet the record contained no certified mail receipt in the record. Accordingly, the majority found insufficient proof that the subpoena had actually been sent to the address on the bond by certified mail. Thus, we read the Billiot case as deciding, on other grounds, that the .district court had not erred in granting the motion to quash since the State had failed to meet its evidentiary burden of proof in establishing notice to the defendant.

. The letter, dated May 6, 2010, was filed into the record for the 24th Judicial District Court, Parish of Jefferson, on May 17, 2010.

. No reference to the nature of the charges, the parishes where charges were outstanding or the particular case numbers were made in the letter. Defendant also contends that a letter was sent to the Clerk of Court for East Baton Rouge. She reports that the East Baton Rouge Sheriff responded to the Texas Department of Criminal Justice with "two enclosed letters,” one allegedly acknowledging the detainer from East Baton Rouge Parish and the second confirming the cancellation of the detainer. The record before this Court, however, does not contain any of such correspondence.

. In Doggett v. U.S., 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the United States Supreme Court noted that "depending on the nature of the charges, the lower courts have generally found post-accusation delay 'presumptively prejudicial’ at least as it approaches one year.” Id. at 652, 112 S.Ct. at 2691, n. 1 (citations omitted). Doggett also held that, in that case, the “extraordinary 8½ year lag” between the defendant’s indictment and arrest triggered the speedy trial inquiry. Id. at 652, 112 S.Ct. at 2691.

. Based on the witnesses who were being subpoenaed for the September 2005 trial, the witness list consisted of the business owners and/or managers of the two businesses from which the thefts took place, the witness whose identity was allegedly fraudulently used in order to rent the goods alleged to have been stolen and the investigating law enforcement officer.